Beebe v. Beebe.

BEEBE v. BEEBE.

1. DIVORCE: INHUMAN TREATMENT. Treatment received is not cause for divorce, and may be alleged in a bill praying for divorce only for the purpose of showing a foundation for the apprehended danger to life contemplated in clause 7 section 1482 of the Code of 1851.

2. SAME. Words of menace which are merely the language of passion do not constitute inhuman treatment in the sense in which the term is used in the statute. When however such words are the expression of determined malignity, and there is reasonable ground to apprehend that they will be carried into effect, they constitute sufficient ground for divorce.

3. SAME. Under section 1482 of the Code, the injury threatened will not be sufficient cause for divorce if it does not endanger the life of the complainant.

4. SAME. When the bill of a husband for a divorce, alleges that the wife has shamefully treated him by beating and bruising him without just cause; that she has at divers times declared that it would be right for her to put poison in his food, and that she would be glad if he was dead; that his occupation required him to keep at all times certain poisons about his house; that he has been compelled to exercise the greatest caution to keep such poisons out of the way of respondent, fearing that she would get possession of them and endeavor to poison him; it was held that the allegations were sufficient under section 1482 of the Code of 1851.

*Appeal from Dubuque District Court.*

FRIDAY, DECEMBER 9.

DIVORCE.    The bill is by the husband, and is substantially as follows: The parties were married in 1831. It it alleged that a few years after the marriage respondent became overbearing in her manner to petitioner and treated him unkindly; that for the last few years she has shamefully treated him by beating and bruising him without any good cause; that within twelve months preceding the filing of the petition she has at divers times declared that it would be right and proper for her to put poison into petitioner's victuals; that she has often said she would be glad if he was dead; that she would act like a fool at his funeral because she would be so much elated. Petitioner further states that his occupation is such

that he is required at all times to keep certain poisons about his house, that he has been compelled to use the utmost caution to keep said poisons out of the way of respondent, for he fears if she could get possession of the same without being discovered she would endeavor to poison him; that at divers times during the past year, respondent has without cause as far as known to petitioner, attacked him in a violent manner, siezed him by the hair, pulled out hand-fulls of the same, saying that she only wished she had power to do much more injury. Respondent is averred to be a person of unbridled passion, and when mad and excited petitioner fears and believes she would kill him, if he should be unable to defend himself, and that if he continues to live with her his life will be endangered.

And finally it is stated that the parties have two children, that respondent is entirely unfit to bring them up and educate them because of her evil disposition, that she has been in the habit of using profane and indecent language in their presence, and at times beats and bruises them in a shameful manner, and that by reason of the ill treatment and threats as stated in said petition, petitioner believes it is unsafe for him to continue to live with said respondent. To this petition there was a demurrer, which was overruled, and from this order respondent appeals.

*Wiltse, Friend & Jennings* for the appellant, cited *Finley* v. *Finley*, 9 Iowa 52; *Thornbury* v. *Thornbury*, 2 J. J. Marsh, 322; Bishop on Mar. & Div. chapter 23 and the authorities there referred to.

*W. T. Barker* for the appellee, cited Bishop on Mar. & Div. chapter 22.

WRIGHT, C. J.—It is provided by the 7th clause of section 1482 of the Code, that divorces from the bonds of matrimony may be decreed against the husband, "when he is guilty of such inhuman treatment as to endanger the life of his wife." And then section 1483, enacts that a husband may

obtain a divorce from the wife for a like cause. The question in this case is, whether taking the bill as true, complainant is entitled to a divorce, under this provision of the Code, or in other words whether he shows such inhuman treatment as endangers his life.

As a specific cause of divorce this clause is the definition of that degree of cruelty which in this State entitles a party to a divorce. The language used differs from that found in the statutes of any other state, but is more like that of Pennsylvania than any to which our attention has been directed. The words of their statute are, "when the husband shall have by cruel and barbarous treatment, endangered his wife's life." In Connecticut, the words are, "intolerable cruelty;" in Massachusetts, "extreme cruelty;" in Kentucky, "cruel, inhuman and barbarous treatment;" and while the forms of expression in these states are different, and while still other forms are adopted in other states, yet according to Mr. Bishop, they are regarded as having the same legal import, and are construed to mean the same as the *sœvitia* or cruelty of the ecclesiastical courts of England. Mar. & Div. section 455.

The leading consideration in cases of this character is, that courts interfere, not to punish an offence committed, but to relieve the complaining party from an apprehended danger. Where adultery, wilful desertion, or a conviction of felony is charged, the party asks a divorce, not because of some threatened injury, but on account of something done by the guilty party, which in legal contemplation releases the innocent one from the obligations arising from the contract, and entitles him or her to its dissolution. In the case of cruelty under our statute, the treatment received is not of itself a cause of divorce, and becomes material only as showing a just foundation for the apprehended danger to life. And this cause of divorce is founded on the well recognized law of nature, that the duty of self preservation takes precedence, and that the duties of this relation are not required to be performed in a state of personal danger. Bishop, section 457.

Cruelty is defined to be any conduct, in one of the mar-

ried parties, which furnishes reasonable apprehension that the continuance of the cohabitation would be attended with bodily harm to the other. *Evans* v. *Evans*, 1 Hag. C. R. 35; 4. Eng. Ec. 310, 312. Or again, that kind of conduct which endangers the life or health of complainant and renders cohabitation unsafe. *Perry* v. *Perry*, 2 Paige 501. Or still again, there must be ill treatment and personal injury, or a reasonable apprehension of personal injury. Words of menace, accompanied by a probability of bodily violence, will be sufficient. *Whispell* v. *Whispell*, 4 Barb. 217. There may be legal cruelty without evidence of actual personal violence. *Harrott* v. *Harrott*, 7 N. H. 196, and cases there cited. Where words of menace are used, which are merely the language of passion, they are not sufficient to justify the interposition of the court. It is different, however, where they are the expression of a determined malignity, and if likely to be carried into effect, will warrant a divorce in order to prevent the threatened mischief, for "assuredly," says Lord Stowell, "the court is not to wait till the hurt is actually done." *Evans* v. *Evans*, *supra*, Bishop, section 466, and cases cited in note 1. Actual violence is not necessary, and this is said to be as firmly established as any principle of law can be in England, and the American states generally. *Honliston* v. *Smyth*, 2 C. & P. 22; *Graecen* v. *Graecen*, 1 Green Ch. 459; 11 Harris, Pa. 156; 19 Ala. 307. And in *Dysart* v. *Same*, 11 Jur. 490, it is stated as a deduction from the leading case of *Evans* v. *Same*, *supra*, "that if austerity of temper, petulence of manner, rudeness of language, a want of civil attention, occasional sallies of passion, *do threaten bodily harm, they amount to legal cruelty.*" This idea expressed axiomatically, according to a case much considered in the Common Pleas of Penn., *Butler* v. *Butler*, 1 Par. Cas. 329, would be but the assertion of the principle, "that whatever form marital ill treatment assumes, if a continuity of it involves the life or health of the wife, it is legal cruelty."

Under our statute it is not sufficient that the threatened injury shall create an apprehension of bodily harm, merely,

Beebe v. Beebe.

but the treatment must endanger the life of the complainant. The language of the statute is, *"such inhuman treatment* as endangers the life," &c. Any wilful conduct on the part of the husband, which endangers, and which was designed to endanger the life of the wife, can be nothing less than inhuman treatment. So that when it is once ascertained that because of the conduct of the guilty party, the life of the libellant is endangered, the nature of the treatment is inhuman or is legal cruelty. Nor is it necessary that the party, before seeking the aid of the court, shall wait until he or she is incontestibly and beyond all question satisfied that there is danger to life; but the true inquiry is, whether there is a *reasonable apprehension* of such danger.

Treatment, as used in the statute, doubtless implies primarily, such inhuman conduct as injures the *body,* and thus endangers the life. And yet we are by no means prepared to say that any treatment, whether calculated to endanger life, by working upon the mind, or injuring the body, may not be inhuman, within the meaning of the legislature. But this question we need not at present discuss, for in the case before us, the facts charged relate to injuries and wrongs committed and threatened to the person, to the body of the libellant. The only question is, whether they are sufficient to entitle the husband to a divorce. Not without some doubt, we have concluded that they are, and that the respondent's demurrer was properly overruled.

The bill charges repeated instances of injuries to the person of complainant, and that they were committed under circumstances manifesting wilfulness and a deliberate intention on her part to disregard the obligations of the marital relation. If the bill is true, then there can be no pretence that affection dwelt in the household, but on the contrary the wife talked of the death of the husband as an event greatly desired on her part, and over which she was ready to rejoice. She has often said, that she wished he was dead; language which if not intended to be used seriously, certainly shows a reckless disregard of the husbands feelings, and if serious,

who can say that she would not execute what her heart desired. *Payne* v. *Same*, 4 Humph. 500. And again it is charged that she uses profane and indecent language in the presence of the children, and beats and bruises them in a shameful manner. And this is not irrelevant. 1 Barb. *supra*, 516, Bishop, section 471, *Towne* v. *Same*, 2 La. 452. And that her treatment of petitioner, aside from any physical injuries, have been such as at least to render his life intolerable. Foul and disgraceful language, will not of course, alone, amount to cruelty in a legal sense, but as it manifests a want of self command and the absence of any thing like controlling principle, courts will therefrom more readily. believe evidence as to personal violence; and if often repeated, will give it its full weight in judging of the treatment which threatens injury to the life of the complainant. The habit of the husband to abuse the wife, and his ordinary temper are important to be considered on the question of cruelty. Bishop, section 462, and notes 2, 3 and 4. But the most weighty consideration in the case is, that the respondent, according to the allegations of the bill, has threatened to poison petitioner, and the fear that she would carry this threat into execution, if she could get possession of the poison without being discovered. The old common law illustration of cruelty is an attempt to poison. "If the husband does by poison, or any other severe usage, lay snares against his wife's life," it is cruelty, and yet there is no actual physical violence. Bishop, section 466, and note 6. It is claimed, however, that there is no allegation of an attempt to poison, and that therefore, inhuman treatment is not shown. This argument may be stated thus, that an intention to poison, or that state of malignity which would lead to the commission of the offense, though it may not be threatened, is not sufficient, unless some attempt has been made in that direction. And the same argument applies to any other threatened injury, whether physical or otherwise. In this argument we cannot concur. The material inquiry in such cases is, whether the life of the complainant is endangered, or will

be by the continuance of the cohabitation. There may have been no act done, in the way of attempting the apprehended injury, and yet the court as well see that there is danger as though there had been many attempts. "Treatment," or "inhuman treatment," is not to receive that limited signification which would confine this clause of the statute to cases of the withholding by the husband of food and medicine from the wife, when sick, or where he confines her in a small and unhealthy room to the detriment of her health, and with danger to her life, nor to those instances in which he beats and bruises her so as to cause her to apprehend the like danger; but threats of violence, where there is danger of harm, that is of harm or injury to the life of the party, is sufficient. And this upon the principle that the party complaining has a right to be relieved from an apprehended danger, and is not bound to wait until there is an attempt made to carry the threat into execution. For we have seen from the authorities that actual violence is not necessary; that words of menace accompanied by a probability of bodily violence will be sufficient; and that whatever the form of the ill treatment, if it threatens or involves the life of the complaining party, it is legal cruelty.

Decree affirmed.