Cole v. Cole.

---

COLE v. COLE.

1. **Divorce: FACTS NECESSARY TO BE ALLEGED.** The facts alleged in a petition, that were held sufficient to warrant a divorce on the ground of inhuman treatment, stated and discussed by WRIGHT, J.

2. —— **CRUEL TREATMENT : LEGAL CRUELTY.** Cruel treatment consists in conduct which furnishes reasonable apprehension, that the continuance of the cohabitation will be attended with bodily harm, or that it endangers the life or health of the wife. There may be legal

cruelty without evidence of actual personal violence ; and, whatever form the ill-treatment assumes, if a continuance of it involves the life or *health* of the wife, it is "inhuman treatment," within the meaning of the statute.

3. —— PRACTICE. A divorce case is to be tried as an ordinary proceeding, and, upon appeal to the Supreme Court, the verdict of the jury is entitled to the same effect as in a purely law action.

4. —— LEGAL CRUELTY: PREJUDICE TO HEALTH. The law nowhere requires the duties of the married relation to be performed in a state of personal danger, and if the cruel treatment relied upon by a complainant for a divorce, involves, or is connected by natural conse-quence with, the *health*, it amounts to legal cruelty, and authorizes a divorce under the statute, on the ground of inhuman treatment endangering life.

> *Argu.* 1. To impair health is to jeopardize life. To do an act involving to its injury the health of a party, is *ex necessitate* to endanger life.

5. —— EVIDENCE: PLEADING. To entitle a complainant to a divorce on the ground of inhuman treatment, it is not necessary to establish all the specifications contained in the petition, nor precisely as laid.

6. Instructions: EVIDENCE. If there is evidence introduced tending to establish any proposition, it is proper to instruct the jury with refer-ence to the law applicable thereto.

7. Divorce: DECREE: ALIMONY: PRACTICE. An order relating to ali-mony, made on the same day as the decree granting the divorce, and following immediately after it, is regarded as a part of the same judgment that orders the decree. And if notice of appeal to the Supreme Court, in such case, is served *before* the order relating to the alimony is fully entered, it is premature, and the right of the court below to make such order thereafter, will not be questioned ; especially where no exceptions were taken or objection made to this action in the court below.

8. —— ORDER IN RELATION TO HOMESTEAD. In decreeing a divorce and granting alimony, the court will make such order in relation to the homestead as the circumstances will justify and as seems equi-table. Ordinarily, the husband, when he has the legal title, and especially when children are left with him, should be left in its en-joyment. But if the title is in the wife, purchased with her means, and she is given the custody of the only child, she should be awarded the homestead.

9. —— HUSBAND'S INTEREST IN HOMESTEAD. And if the husband's money has contributed to its value, in improvements, the case is not

varied, and its sale will not be ordered in order that each may have a due proportion. Nor will her legal title be recognized subject to a lien in his favor for improvements, but the court will adjust these respective claims with regard to the rights of both parties.

10. —— CUSTODY OF CHILDREN: UNDER THE STATUTE. In deciding whether the husband or wife is to have the custody of their child, it is the duty of the court, under the statute, to make such order in relation thereto as is proper and right.

11. —— TENDENCY OF MODERN DECISIONS. The tendency of modern decisions is to deny that the husband's right to the custody of the child over the wife, is an absolute one, and to regard the welfare and future well being of the child in awarding its custody. The facts that were, in the present case, held sufficient to sustain the order of the court below in giving the custody of the only child to the mother, reviewed by WRIGHT, J.

### *Appeal from Muscatine District Court.*

### TUESDAY, DECEMBER 17.

THE wife, Martha T., claims a divorce, alleging as a cause, "inhuman treatment endangering her life." She also asks alimony and the care and custody of their only child, a son, now aged about thirteen years. The issue joined was submitted to a jury; verdict for plaintiff, and a judgment followed granting the divorce, awarding alimony and the custody of the child. Defendant appeals.

*Cloud & Broomhall* for the appellant.

*Richman & Carskadden* and *Thomas Hanna* for the appellee.

WRIGHT, J. — I. It is first claimed that the petition does not state facts sufficient to warrant a divorce. In disposing of this point it will become necessary to state as briefly as possible the main allegations of the petition, which undertakes to give at great length and in detail, the matters constituting the "inhuman treatment."

1. DIVORCE: facts necessary to be alleged.

These parties were married in 1852. Plaintiff alleges in various forms her own innocence and the discharge of her duties as a wife; that they lived happily until 1856, when he failed to regard the sanctity of his vows, and commenced a course of inhuman treatment which has grown and increased in severity, until it endangers her health and life. In 1857, she lost the use of her lower limbs from an attack of inflammatory rheumatism, since which she has been almost as helpless as a child, her nervous system becoming so shattered and disordered as to require careful attention, and kind and tender treatment, as well as the aid of experienced physicians.

Notwithstanding this condition, the defendant, as she charges, has frequently applied to her the most insulting epithets, using profane, indecent and obscene language; has allowed others to insult her with foul and opprobrious words; has declared that "he owed plaintiff no duties as a wife;" had no sympathies for her in her affliction; and "that a man has a right to kill his wife when he thinks that she deserves it;" that he has refused to furnish her the necessaries of life; or to supply her with money; denies her the service of a physician; upon the slightest fancied provocation gives way to violent fits of anger and curses her without stint or measure; that he has become addicted to the habitual use of intoxicating drinks, and when under the influence of liquor entirely disregards the decencies and proprieties of life, and stops at nothing which he supposes will mortify or distress her, such as burning up a new hat she had just purchased, tearing from the wall a new map of the United States, and refusing her all papers and magazines. That such conduct, hard to bear in her health, in her enfeebled condition is undermining her health and endangering her life, and she has reason to fear and does fear personal violence.

It is also alleged that she is advised that with proper

care she could be entirely cured and recover the use of her limbs; that he refuses her medical aid, or to provide her with an attendant to assist her in walking, notwithstanding his means are abundant; that he has lost all regard for her; conceals from her, as far as possible, her legal rights; forbids her seeking legal advice; refuses to take her out for exercise or for her health; refuses to permit ·her to manage her household affairs; will not permit her to judge of nor supply the domestic wants of her child; has forbidden her friends to visit her; has sought to isolate her from society; has locked the doors and refused her access to portions of the house, and secreted the keys, etc., wherefore, etc.

In *Beebee* v. *Same*, 10 Iowa, 133; *Caruthers* v. *Same*, 13 Id. 266, and in *Freerking* v. *Same*, 19 Id. 34, we had occasion to examine with some care and apply the statute now under consideration. Guided by what is said and held in those cases, we have no hesitation in holding that the petition contains sufficient to entitle plaintiff to a divorce. For the law and rules governing and the reasons upon which they are founded, without here repeating them, we refer to those cases and the authorities there cited.

A most important element in this case is the alleged helplessness of the wife, her long and protracted illness, and her need of medical and other treatment and attention. What would be inhuman treatment to her, and such too as would endanger her life, might to a person in good health and possessed of a vigorous constitution fall far below the cruelty of the statute.

To deny to one in her situation medical assistance, if such assistance was in fact needed, and the husband reasonably able to give it, would of itself amount to inhuman treatment. For, to withhold from the wife food, or nourishment, or clothing necessary to her warmth and

Cole v. Cole.

comfort, or the services of a nurse or a physician, is, or may be, as much legal cruelty as to be guilty of the more flagrant act of administering poison, giving unwholesome food, beating and bruising the body, or the like. And this is more emphatically true where the wife, weak and nervous from long and protracted illness, is subjected to abusive, coarse, violent, profane and obscene language; denied the counsel and tender care of friends and relatives; not allowed to supply her domestic wants; confined without cause to one portion of the house, deprived of the necessaries of life, and that, too, by one addicted to the habitual use of intoxicating drinks, and who gives way to violent fits of rage, cursing without stint or measure. It will readily be seen, that to one in plaintiff's condition these things, if true, would indicate, that the husband was destitute of kindness; that he was cruel and unfeeling, if not barbarous and savage, and that they might indeed endanger her life. We say they *might*. She alleges, that they *did*, setting forth the facts with great particularity. We can see, that reasonably and fairly they would have this effect. Whether she was in this helpless condition, and whether these acts and omissions did, in fact, have this effect, were questions to be determined by the jury, and as to which we shall presently inquire.

From the facts as stated, we are clear that the life of the wife would be endangered by a continuance of the 2. —— cruel cohabitation, and more than this is not treatment: legal cruelty. required. For cruelty is that conduct which furnishes reasonable apprehension that the continuance of the cohabitation will be attended with bodily harm, or that endangers the life or health of the wife, and renders cohabitation unsafe. *Perry* v. *Same*; 2 Paige, 501; *Evans* v. *Same*, 4 Eng. Ec. 310, 312. There may be legal cruelty without evidence of personal violence.

Cole v. Cole.

*Whispel* v. *Same*, 4 Barb. 217; 11 Harris (Pa.) 156. And whatever form the ill treatment assumes, if a continuance of it involves the life or health or the wife it is inhuman treatment within the meaning of the statute. *Butler* v. *Same*, 1 Par. Cas. 329, and the cases before cited, in this court.

II. It is next claimed that the petition is not sustained by the evidence, and that the finding of the jury is

3. —— practice. against the decided weight of the evidence.

Cases of this kind are triable in the second method of trying equitable causes (Rev. § 3000), and we try only the legal errors as in a case by ordinary proceeding, "including the sufficiency of the facts," to warrant the judgment or finding (§ 2999, sub. 3 and § 4184). See also *Moon* v. *Same*, 19 Iowa, 130; *Docterman* v. *Webster*, 15 Id. 522; *Carlton* v. *Byington*, 17 Id. 579;

This being true, we look at the case as an "ordinary proceeding," giving to the verdict of the jury the same weight and effect to which it would be entitled in a purely law action. Thus viewing it, we could not consistently with any one of the numerous cases found in our reports, disturb this verdict. The evidence covers nearly four hundred pages of the record. It is conflicting to a degree seldom found. If plaintiff's testimony and the witnesses sustaining her, received credit at the hands of the jury, this verdict was warranted. If defendant and his witnesses were, then it was not. And without referring to the evidence in detail, this conflict alone is sufficient to prevent our interference. This has been too repeatedly held to need elaboration or authorities to support it. But see *Brockman* v. *Berryhill*, 16 Iowa, 183; *Whitney* v. *Blunt*, 15 Id. 283; *McNair* v. *McComber*, Id. 368.

III. It is objected, that the instructions failed to give the law correctly. To this argument, a most sufficient

answer is found in the fact that these instructions, cover-
ing some twenty-five pages, given in chief—for none were
asked by either party—are not excepted to, in whole or in
part.   For this reason, therefore, we might pass the objec-
tion without further consideration.   And yet, as the case
is important, and counsel rely upon this " as the real error
in the case," we shall briefly examine the material parts
of these instructions.   And this we shall do by stating
generally our views of the law governing the questions
made.

We remark, that, while "inhuman" may mean "bar-
barous and savage," the treatment in these cases need not
4. —— legal      amount to barbarity to entitle complainant to
cruelty: preju-
dice to health.   a divorce.   If the conduct is marked with
cruelty, if it is cruel and unfeeling, indicating an absence
of that kindness and tenderness that belongs to a human
being, it is sufficient, if it endangers life.   This is the
clear teaching of the cases herein before cited, and, in
this respect, the court clearly followed almost the literal
language of the books.

In several places, the court charged, in effect, that, if
the continuance of the ill-treatment *involved* the life or
*health* of the wife, it was legal cruelty.   And now it is
objected, that this perverts the meaning of the statute,
which declares, that the ill-treatment must endanger the
*life* of the petitioner, saying nothing about *health*.

The fair meaning of the instruction is that the jury
should find, that defendant's conduct tended materially
*Argu.* 1.       to affect and impair the health or life of the
wife,   And to it there is no just objection.   To impair
health, is to endanger life.   To do an act involving, to its
injury, the health of a party is, *ex necessitate*, to endanger
life.   True, it may not endanger or involve the life at
once.   Nor is this true in most of the cases of this nature.
For, to illustrate, the mind may be so burdened, a

Cole v. Cole.

nature, keenly alive, from nervous prostration, to harsh and violent conduct, may be so wrought upon, that the life is endangered, though it may be able to bear up under such cruel and unfeeling treatment for months and years. So poisons may be administered, slow and insidious in their effects; the sufferer may be able to withstand this for many months, and yet life is nevertheless endangered. It is that treatment which involves the health and undermines the vigor and soundness of the constitution, which precedes death; and such treatment cannot involve the one without involving the other.

The duties of this relation are not to be performed in a state of personal danger. The law nowhere requires this. It is true that not every fancied or real wrong which may for a while render unpleasant the complainant's life, or subject her to momentary pain or temporary illness, would amount to legal cruelty. But if the act involves, that is, if it is connected by natural consequences or effects with, the health, not for a moment, not temporarily, but to its actual and real prejudice, it amounts to legal cruelty. Of the correctness of this conclusion under the authorities, we think there can be no doubt. See generally *Pidge* v. *Same*, 3 Metc. 257; *Elmer* v. *Same*, 7 Burr. 166; *Tourne* v. *Same*, 9 La. 452; *Rice* v. *Same*, 6 Ind. 100; *Rosse* v. *Same*, 4 Eng. 507; *Gracean* v. *Same*, 1 Gr. Ch. 459; 1 Bishop M. and D. 718, 719, 725, 728, 733; *Butler* v. *Same*, 1 Par. Cas. 329; *Lockwood* v. *Same*, 3 Dana, 28; *Dana* v. *Same*, 28 Ala. 222; *Mahon* v. *Same*, 19 Cal. 626.

The petition contains very many specifications of ill-treatment, giving with great minuteness, under each, the
5. — evidence: pleading. facts relied upon to sustain the same. To entitle plaintiff to the relief asked, it was not necessary to establish all of these specifications, nor precisely as laid. If enough was shown to satisfy the jury

Cole v. Cole.

that the husband had been guilty of inhuman treatment as above explained, this verdict was right, and an instruction to this effect was not erroneous.

Other instructions are objected to because there was no evidence to warrant them, and others, particularly the 6. INSTRUCTIONS: evidence. twelfth (objected to as the thirteenth), upon the ground that it related to matters of property, with which the jury had nothing to do. An examination of the record satisfies us that there was evidence upon every point alluded to in the instructions. We do not say how much, for if there was evidence fairly tending to establish any proposition, it was proper to give to the jury the law in relation to the same; and as to the twelfth, we remark that while, so far as it related to the property rights of the parties, it might have been omitted, it was not inapplicable under the claim made by plaintiff, that the homestead was hers, bought with her means, the title in her name, and that defendant had interfered with her use and control of the same. There is no objection to the law as given therein, and if we admit that it would have been as well to have omitted it, there was still no prejudicial error, for it certainly had but little, if any influence, in determining the verdict. The case, beyond question, turned upon other matters, such as went directly, clearly and pointedly to establish the main issue.

And we therefore reach the conclusion, waiving the want of exceptions, that the court's charge is not vulnerable to the objection taken. Indeed, looking at it in all its points, construing its different clauses in connection, we think the law of the case was very fully, fairly and intelligently given to the jury.

IV. The order in relation to the property is claimed to be unjust and unreasonable, and it is insisted, that the

Cole v. Cole.

7. DIVORCE: court had no power to make it, as counsel
decree: maintain, after this appeal had been taken
alimony:
practice. from the judgment of divorce.

Here, again, we remark, that defendant failed to except, or apparently make the least objection to the court's action. On the contrary, he, by his counsel, consented, in open court, to at least a part of the order. The facts disclosed by the record are as follows: The trial commenced July 15, 1867, was submitted to the jury on the 24th, and the verdict for the plaintiff rendered the same day. On the 25th defendant served notice of appeal from the judgment granting the divorce, on plaintiff's counsel, and the clerk. The same day the motion for a new trial was overruled and the decree granting the divorce entered. "And afterward, to wit, on the same day," continues the decree, "this cause came on for further hearing upon the question of alimony and the custody of the child, etc. In March afterward, defendant served notice of appeal "from the judgment and order." From this brief statement it will be seen that there is nothing to sustain the position, that these orders were made after the first appeal. The order in relation to alimony is a part of the same judgment which orders the divorce, follows immediately after it, and all entered the same day. The notice was served the same day. If *before* the judgment, then it was premature and of course could not arrest the action of the court. If *after*, then the order in relation to the alimony and the custody of the child, preceded it, and the objection falls to the ground. Not only so, but this decree recites, that the money part of the judgment ($2,000) "was the sum agreed upon by the parties." And then, when we remark again that defendant in no manner excepted or made objection to this part of the decree, nor to any claim in it, except the order granting the divorce, the

objection, as now urged, is most clearly untenable. This, too, without pretending to intimate, that the court would not have had full power and right to make such orders, even after the appeal from the judgment of divorce.

Turn we then to the orders in relation to the property and the custody of the child. As already stated, so much as relates to the $2,000 was agreed upon, and of course it should not be disturbed. In addition to this she was allowed in her own right the homestead, consisting of about twenty-four acres with the improvements, the personal property brought by her to the defendant, or purchased with her money since the marriage, and her buggy horse given to her by her father.

For a case as warmly contested as this, between parties occupying their social position, and so well aware of their respective rights, the evidence as to property is exceedingly meager. She says he is worth $30,000, while he answers that he is worth but little, if any more than one-third that amount. According to the bill, she had in her own right $1,850, of which $1,100 was used in purchasing the homestead. He admits that she had $1,600, and that $1,000 was thus invested. He swears that he expended $3,500 in improvements on the homstead, while she says that the expenditures did not exceed say $1,800. He dealt largely in real estate, and, as the testimony tends to show, has, for some cause (he asserts for one, she for another), been gradually getting the title into the names of other persons. Whatever may be the true cause, she states that at one time within a year or two before the separation, she released her dower right in about $11,000 worth of property. She also says that she consented to the sale of another tract, with the agreement on his part to invest a portion of it in improvements on the homestead. Aside from general testimony, that he was engaged extensively in real estate operations, that he sold some

farms for large sums, that he now holds no lands in his own name, is a tacit rather than an express admission that he is a man of fair, if not abundant means. There is nothing else to show his pecuniary condition.

In this state of the record, if the $2,000 had not been allowed by the agreement of parties, we should have felt inclined to modify this part of the judgment. In view of the agreement, however, and after giving the case our best thought, we are brought to the conclusion that it should not be disturbed.

If divorced, they, of course, could not both occupy and enjoy the homestead. It was bought with her means, and the title taken in her name. This fact has a controlling influence in its disposition.
8. —— order in relation to homestead.
No one could certainly consistently claim that he should have it. Separated, they could no longer use and occupy it as a home. So long as the marriage relation continued, he, with her, had this right. But a divorce and separation being found necessary, the court must make such order in relation to it as the circumstances will justify, and as seems just and equitable. Ordinarily, when he has the title, and especially when children are left with him, he should be left in its enjoyment. But the title being in her, if purchased with her means, it would seem as reasonably to follow that she should retain it.

The only difficulty in the case before us, is that his money has contributed to its value. No one would think of ordering its sale, that each might get a due proportion from the proceeds. This would
9 —— husband's interest in homestead.
violate all our ideas of the sanctity and object of a homestead. Nor would it be admissible to recognize her title, subject to a lien in his favor for the amount expended for improvements. For if so, and he should be required to pay money in place of the improvements, he would be in no better condition. Then again, it is not as though he

had a large family demanding his care, and making it just and necessary that the home should be his.

These questions must be settled with a due regard to the rights of both parties, and each case must necessarily depend upon its own facts. In *Inskeep* v. *Inskeep* (5 Iowa, 204), we had occasion to discuss, somewhat at length, the rules which should govern in making, in the language of the statute, "such disposition of the property of the parties as shall be right and proper" (Rev. § 2537), and we adhere to all that is there said. Because the title to this property was in the wife; because there is certainly less equity in his claim than hers; because he is not so situated as to require its use; because there was no objection to the $2,000 allowance; because, looking at the averments of the bill and his denial and statements, we believe him to be worth from $15,000 to $20,000; because, at the most, she is allowed but little, if any more than one-fifth of his means, and because he is still left in most comfortable, if not affluent circumstances, we conclude that the court did not err in awarding to her the homestead. Of course we need not stop to say any thing as to the correctness of the order in relation to the property, consisting of beds, bedding, and other household goods, bought with her own means, and the horse presented to her by her father. We do not understand counsel to object to this, nor indeed could they in view of all the facts.

But one question remains and this is the order in relation to the custody of the child. *Our duty is to make* 10. —— custody *such an order as shall be right and proper.* of children: This is the command of our law, which is under the statute. but an abbreviated declaration of the same provision as found in 20 and 21 Vict. ch. 85, § 35, and 22 Id. 61–64; and in most of the States in this country. 2 Bishop, 526.

Whether the effect of the statute is to abrogate the superior common law right the father has over the mother **11. ‒‒ tendency of modern decisions.** to the custody of their children (*Ahrenfeldt* v. *Ahrenfeldt*, 1 Hoffman, 497), this much is clear, that the tendency of all the modern decisions is to deny that this is an absolute right, and to regard what humanity, common reason and the best interests of society demands, that they should consult the welfare and future well being of their mutual off-spring. · 2 Bishop, 532; *Barrere* v. *Barrere*, 4 Johns. Ch. 187; *Cook* v. *Cook*, 1 Barb. Ch. 639; *People* v. *Mercein*, 3 Hill, 399; *S. C.*, 8 Paige, 49; *Jean* v. *Jean*, 2 Harrington (Del.) 142; *Hansford* v. *Hansford*, 10 Ala. 561. Upon this subject no inflexible rule or rules can be given. It is said in some of the cases, that in general, the courts will award the custody to the innocent party, and that a husband false to his marital vows will probably prove an unfit guardian for his children. *Bedell* v. *Bedell*, 1 Johns. Ch. 604; *Clark* v. *Clark*, Wright, 225; and cases cited in note to 2 Bishop, 532; also 1 Hoff., *supra;* Bishop 541, 542, 543. Sometimes the courts have to determine between parties equally unworthy, and in others, leave the children, having reference to their welfare, with the guilty party. *Commonwealth* v. *Addick*, 5 Binney, 520; *Leavitt* v. *Leavitt*, Wright, 719. And so there may be cases where there is no clear objection to either party. 1 Hoff. *supra*.

In the absence of statute, the stern rule of the common law unquestionably makes the rights of the father, under ordinary circumstances, paramount to the mother's. Says Mr. Bishop: " During the very young years, especially in the case of girls, the mother can best take care of them, in ordinary circumstances. In later years, they need the sterner discipline of the father." And most appropriately does he add: " Yet, neither in the case of the younger children, nor in that of the older, are these propositions

to be carried to all lengths. The party who has behaved well in the marriage relations, will be likely to behave well also in the parental, therefore this party should usually have the care of the children." 2 Bishop, 544.

Let us now, in the light of the foregoing observations, turn to the case before us. And, just here, we remark, that we have had no little difficulty in arriving at a satisfactory conclusion as to this part of the judgment.

We have endeavored to consult the rights and feelings of both parents, and yet keep steadily in view the welfare of the child. We could not forget that he is of the age to demand the care, discipline and instruction of the father. Nor have we overlooked the feeble condition of the mother, nor yet her need of the society and assistance of the son in her affliction. Both are pecuniarily liable to secure an education and proper training, and both express an earnest willingness for his custody. Keeping in view all these considerations, and others readily suggesting themselves, and which we cannot stop to specify, the question remains, what does the best interest of this child require? Not without great doubt and hesitation we have concluded to leave him with the mother. Our reasons for refusing to disturb the order of the court below may be briefly stated:

The jury found that she was the innocent and he the guilty party, and thus determined that he had been guilty of such inhuman treatment as to endanger her life. That he is addicted to the use of intoxicating drinks is quite clearly established; that he is profane, indulges in the use of the most vulgar and obscene language in the presence of his wife and child and others; that he is a man of most violent and ungovernable temper; that he, at one time, at least, took this boy to a saloon and asked him to drink; that he has but little regard, if any, for religion or religious influences. We say all these matters

are reasonably well established from the testimony. On the other hand, while her conduct has not at all times been blameless, being, as the testimony shows, fretful, fault finding and inclined to talk at times, heartily maintaining with spirit her side of their many domestic controversies, she, nevertheless, is of irreproachable morals, attending well and faithfully, as far as possible, in view of her health, to all the duties of wife and mother, even giving to the child the best and most salutary lessons and counsel. She has never abused him by word or act, while the father has certainly by the former, if not the latter. And, therefore, we conclude that for the present, the welfare and best interests of this child will be consulted by giving him into her custody, subject of course to the right of the father to visit and see him, as provided in the decree below. But the decree should be so framed that the father, while at his option he may, yet, without his consent, shall not be, held for the expenses of his board, clothing, education or any thing, so long as he thus remains with the mother, but that such expenses shall be wholly paid and discharged by her. And it is ordered that the decree be so modified. And further, to avoid all misconstruction, it should provide in terms, that the alimony in property and money in said decree allowed, shall be taken, accepted and treated as an absolute bar to any and all claim of the wife as dower or otherwise, now or hereafter, in any and all property of the husband, real and personal. And that the same be held by him, his heirs, and all persons claiming or holding under him, free from any rights or interests of hers, as fully and entirely as though she had by proper muniments of title, parted with her title, estate or right therein. And this modification also, the court below will accordingly order.

The suggestion by appellee, that we should make some order for additional alimony, pending the litigation, does

not strike us with favor. We think that plaintiff has had all that she can reasonably or fairly ask, all that the circumstances seem to demand, and we are not disposed to further burden the defendant. She ought to be content with what she has.

Affirmed.