## Zuver v. Zuver.

1. **Divorce:** ALIMONY AND CUSTODY OF CHILDREN : PLEADING. Under section 2537 of the Revision, providing that " when a divorce is decreed, the court may make such order in relation to the children and property of the parties and the maintenance of the wife as shall be right and proper," the court may award permanent alimony and the custody of the children even though no prayer or claim therefor is made in the pleadings.

2. —— The fact that the husband obtains a divorce for the fault of the wife, instead of the wife one for the fault of the husband, has a material bearing on the amount of alimony to be allowed the wife.

3. —— In the present case the allowance of alimony made by the court below was considered too great, and largely reduced by the supreme court. All of the cases heretofore decided by this court bearing on the allowance of alimony, reviewed by COLE, J.

*Appeal from Harrison District Court.*

WEDNESDAY, MARCH 19.

THIS action was originally brought March 15th, 1871, by the husband, plaintiff, for a divorce from the wife, defendant, on the ground of cruel and inhuman treatment of the husband by the wife. The petition contained averments in detail of the alleged cruel and inhuman treatment. The answer denied

them substantially. After the issues were made up and the court had disposed of certain motions for alimony *pendente lite*, the cause was, at the September term, 1871, by consent, tried to a referee, who was "to take the testimony and report the facts found therefrom by him to the court," who was "to render a decree upon the facts found by the referee." On the 22d day of January, 1872, the referee made his report, finding the following facts:

*First.* That plaintiff has been a resident of this county and State from a period, more than six months prior to the commencement of this suit to the present.

*Second.* That his application is not made through fear or restraint, or out of any levity, but in sincerity and good faith, and for the purposes set forth in his petition.

*Third.* That plaintiff and defendant were married on 1st January, 1861, at Armstrong county, Penn., and lived together as husband and wife until 25th November, 1870.

*Fourth.* The plaintiff has, ever since their marriage, furnished defendant with a home and the necessaries of life (food and clothing), sufficient for comfort, to her and his family.

*Fifth.* The defendant is a woman of violent temper, and frequently since their marriage, has scolded and upbraided plaintiff in a violent manner.

That some time during the year 1869, defendant, when in a passion, told plaintiff that he ought to be poisoned, and that he ought to have a knife run into him.

That on the night of 24th of November, 1870 (being the night before plaintiff finally left defendant), defendant struck plaintiff several times with her hand when he was in or attempting to get into bed with her; that plaintiff thereupon left her bed and room and went to another bed, where he usually slept — that defendant followed him into his room and struck at him with a stick of pine wood, 16 or 18 inches long, which blow plaintiff warded off with his hand or arm.

That defendant, at same time, declared to plaintiff that she

would blow his brains out, and that she would, kill him before three days.

That on the next morning thereafter, to-wit: on the 25th of November, 1870, defendant locked plaintiff out of the house — that he came in the house through the window — that after his so coming into the house, defendant committed an assault and battery on his person by hitting him on the head with a boot, and, at the same time, declared that if she had a revolver she would shoot him, and that she would kill him before three days.

*Sixth.* That defendant, as many as three times, intentionally locked plaintiff out of his dwelling-house in the evening when he came home to retire for the night, so he was compelled, on two occasions, to go elsewhere and seek lodgings, and on one occasion, was compelled to enter the house through a window.

*Seventh.* That on the morning of 25th November, 1870, plaintiff left his house on account of said treatment, and has not since that time lived or cohabited with defendant.

*Eighth.* That plaintiff and defendant are the parents of five children, the youngest of whom was born since the commencement of this suit. That the eldest, or first child, is eight years old, the second six years old, the third four years old, the fourth two years old, and the fifth about four or five months old, and is at the breast.

*Ninth.* That plaintiff is the owner of the following real estate, to-wit: Lots 21 and 22 of block 4, in Missouri Valley, Iowa, of the value of about $5,000; lot 6 in block 16, in Missouri Valley, Iowa, of the value of about $2,000; 35 67–100 acres of land in Sec. 22, Tp. 78, R. 44, of this county, of the value of about $400; also, 59 acres of land in Pennsylvania, of the value of $500.

*Tenth.* The plaintiff's debts amount to the sum of a little over $2,000.

Upon the facts thus found and reported by the referee, and to which neither party made any objection whatever, the court rendered a judgment for divorce in favor of

the plaintiff; to which the defendant duly excepted. But no appeal was ever taken therefrom by either party. The matters of permanent alimony and the custody of the children were continued till the next term of court, "there not being sufficient evidence, or facts reported by the referee to enable" the court then to fully determine those questions. The sum of $300 was allowed in said judgment to the defendant as temporary alimony for the support of herself and children; and the plaintiff was ordered to pay the same, "and in case of his failure so to do, he shall be held to answer as for contempt." This order was afterward reduced one-half.

The further testimony taken in the cause upon the questions of alimony and the custody of the children did not disclose any special fitness or unfitness of either the plaintiff or the defendant for the custody and care of the children other than that implied from the facts reported by the referee and the fact that the plaintiff has since been married to another wife. Nor did it disclose, aside from a small general depreciation, any thing material respecting the value or condition of the property of the plaintiff, except that on lots 21 and 22 of block 4 in Missouri Valley, was situated a frame building rented for, and used as, a hotel, and known as the American House; that upon the west part of lot 6 in block 16 in Missouri Valley was situated a house which had been used as a homestead by the plaintiff and defendant before their separation, and had been occupied as such by the defendant and their children since the separation; that upon the east part of said lot 3 were other tenements; that the indebtedness of the plaintiff was about $50 in excess of the amount reported by the referee, besides, and over and above the unpaid alimony allowed and the costs of this action; and further, that $1,225 of said indebtedness was secured by mortgage on lots 21 and 22, and $240 of it by a mortgage on 35.67 acres of land in section 22; and about $500 was a lien for the purchase-price, in part, of lot 6 in block 16 aforesaid.

Upon the final hearing the court adjudged and decreed the custody of all the children during their minority to the

defendant; and also set apart and allowed to the defendant, as permanent alimony for the support of herself and the minor children, the ownership in full of lot 21 and 22 in block 4, and the west part (specifying it by metes and bounds) of lot 6 in block 16, and also ordered the east part of said lot 6 to be sold under execution to pay the incumbrances. The plaintiff excepted and appeals.

*Baldwin & Wright* and *J. R. Zuver pro se* for the appellant. To the point that defendant cannot be granted alimony and custody of children without a cross-bill praying therefor, cited *Compton* v. *Comer*, 4 Iowa, 577; *Armstrong* v. *Pierson*, 5 id. 323; *MacGregor* v. *MacGregor et al.*, 9 id. 77; *Holladay, adm'r*, v. *Johnson et al.*, 12 id. 565; *Gwynn* v. *Turner*, 18 id. 4; *Knowles* v. *Rablin and Corwith*, 20 id. 104; *Blake* v. *Blake*, 13 id. 41; 2 Bishop (4th ed.), § 539; *Yost* v. *De Vault*, 9 id. 64.

*S. E. Brannan* for the appellee.

COLE, J.— I. The first point presented by the appellant's counsel is, that permanent alimony and the custody of children will not be awarded a defendant without a cross-petition in which such alimony and custody are prayed for. Our statute enacts, Revision of 1860, "§ 2537. When a divorce is decreed, the court may make such order in relation to the children and property of the parties and the maintenance of the wife as shall be right and proper. Subsequent changes may be made by the court in these respects when circumstances render them expedient." The answer of the defendant is not made a cross-petition, nor is there contained in it any claim, for either alimony or the custody of the children. But, in our opinion, a fair and practical construction of the section of the statute above quoted, authorizes the court to make a just and proper order respecting both the permanent alimony and the custody of the children, in a divorce proceeding, even though the pleadings may contain

nothing in reference to them. They are, by the statute, made incidents to the divorce; and upon the making of the decree for a divorce, full power is given over the questions of permanent alimony and custody of the children. No necessity for issues on the latter can arise until the decree. *McEwen* v. *McEwen*, 26 Iowa, 375, and cases cited.

II. Upon the question of permanent alimony, it may be remarked, that our attention has not been called to any principle or precedent which affords support to the judgment of the court below. By reference to the report of the referee, it will be seen, that the aggregate value of all the property of the plaintiff is fixed at $7,900; and his indebtedness at $2,000. The testimony taken subsequently shows the value of the property to be something less than the referee reported, and the debts something more. These two facts, taken in connection with the costs and the temporary alimony unpaid, would leave the plaintiff worth, in property, after paying his debts with a part of it, at the price fixed, not to exceed $5,500. And the court below, by its decree, gave the defendant, absolutely, one item of the property valued at $5,000, and the west half of another item of property valued at $2,000; so that, if the east half and the west half are of equal value (whether they are or not is not shown), the wife gets therein $1,000 more, making a total of $6,000, to her as permanent alimony; or $500 more than the plaintiff is worth. And besides this, the decree below orders an execution to issue against the east half and its sale thereunder, to satisfy an incumbrance upon the part allowed to the wife; and this, too, without any showing that the incumbrance, or the debt it secures, is yet due. Surely, such a decree cannot find any support in principle, and ought not to find any in precedent.

There is, however, less trouble in determining the decree as rendered, to be incorrect, than in determining precisely what decree will " be right and proper." For, although we might find it difficult to justify any interference with the report of the referee upon the facts whereon the decree for divorce was granted, since there was conflict in the evidence, and the report

stands as the verdict of a jury in such cases (Rev., § 3000; *Cole* v. *Cole*, 23 Iowa, 433 [*i. e.* 439]), yet, we are free to confess, that as we see the evidence, we should have been better content with a finding which would have justified a denial of the divorce. By the finding and decree the wife is adjudged to be in the wrong; and no appeal having been taken from that judgment, it is conclusive upon her. And, yet, it may not conclude us from an examination of the evidence to ascertain just the measure or degree of her wrong as bearing upon her "right and proper" measure of alimony.

In determining the amount and the subject-matter of her permanent alimony, regard should be had alike to the true interests of the husband, the wife, and the children. *Abey* v. *Abey*, 32 Iowa, 575. It has been determined by this court that it is not proper to give to the wife as alimony, a part of the husband's real estate in fee. *Russell* v. *Russell*, 4 G. Greene, 26. But this ruling was disregarded, and a part of the lands of the husband given in fee to the wife for alimony in *Jolly* v. *Jolly*, 1 Iowa, 9. The power so to do was grounded in part on the language of the statute above quoted, which was section 1485 of the Code of 1851. And this ruling was affirmed, substantially, in the opinion of the court, delivered by WRIGHT, Ch. J., in the case of *O'Hagan* v. *O'Hagan*, 4 Iowa, 509. And it was also adhered to in *Inskeep* v. *Inskeep*, 5 Iowa, 204. But in the last-named case, where the wife obtained a divorce, and the district court decreed as alimony to the wife $4,150 in money, and also certain lots, valued at $850, this court modified the decree by refusing to allow the lots to the wife as alimony and making the sum of money allowed, in full for the alimony of the wife, and of all her rights to the husband's estate; and this, too, where the proof showed the husband to be worth $16,000, over and above his debts. In the case of *Jungk* v. *Jungk*, 5 Iowa, 541, the wife had obtained the divorce and was allowed $500 in money as alimony; but the amount of the husband's estate is not stated in the opinion. In *Dupont* v. *Dupont*, 10 Iowa, 112, the wife obtained a decree for divorce on the ground of adultery,

and the district court refused alimony. This court reversed the judgment, so far as respected alimony, and allowed the wife $80 per year. The value of the husband's property is not given, but it is stated that " the defendant is in good circumstances."

The case of *O'Hagan* v. *O'Hagan*, 14 Iowa, 264, was where the wife obtained a divorce from the husband and a judgment awarding to her all the husband's real estate as alimony ; and on appeal to this court the judgment so far as alimony was concerned was reversed, and she was allowed only forty acres ; and this, although the evidence in the case was not before the court. In the case of *Cole* v. *Cole*, 23 Iowa, 433, the wife obtained a divorce on the ground of inhuman treatment endan gering her life, and was allowed as permanent alimony, $2,000 in money, the homestead, consisting of twenty-four acres with improvements, her own money having been used in part payment of the purchase-price ; and also a buggy horse given her by her father. The husband was proved to be worth from fifteen to twenty thousand dollars. Upon appeal to this court the judgment was affirmed ; the court, per WRIGHT, J., remarking, among other things, that " if the $2,000 had not been allowed by the agreement of parties, we should have felt inclined to modify this part of the judgment." And further, that the expenses and support of the child, the custody of which had been awarded to the wife, " should be wholly paid and discharged by her ; " and also ordering that in the decree for alimony it be specified that it " shall be taken, accepted and treated as an absolute bar to any and all claim of the wife as dower or otherwise, now or hereafter, in any and all property of the husband, real and personal." In *Farley* v. *Farley*, 30 Iowa, 353, the wife obtained a divorce and an order allowing her $1,300, as permanent alimony. The homestead of the husband was worth $4,000. On appeal the judgment was modified by allowing a longer time for the payment of the sum awarded as alimony, and otherwise affirmed. And in *Fisher* v. *Fisher*, 32 Iowa, 20, a motion was made by a husband, who had before been divorced, and ordered to pay his

wife $150 per year, as permanent alimony, to reduce the amount. The showing made was, that at the time of the decree the husband was reputed wealthy, and that now rumor reports him to have met with pecuniary losses; and the district court refused to make any change. This ruling was affirmed. In *Abey* v. *Abey*, 32 Iowa, 575, the wife obtained a divorce for cruel treatment, and $400 per annum alimony. The husband owned a homestead worth $2,500; had $300 on deposit in bank.; and his income was $1,000 per year, salary as a book-keeper in a bank, and also $180 per year rent for the homestead; he owed $1,125. On appeal, this court said, "in our view the very outside limit of proper alimony to the wife is $1,000," and the judgment of the district court was modified accordingly. See also *Blythe* v. *Blythe*, 25 Iowa, 266.

The foregoing are all the cases upon the subject of alimony, which have been determined by this court; and it will be seen, that in no case has this court given as much as one-third of the value of the husband's estate to the wife as alimony, except it may be in the case of *Abey* v. *Abey*, where it exceeded it by $67, and the annual income of the husband was $215 more than the gross sum given the wife. And these decisions are in accord with the current of adjudications throughout the other States. But, as applied to this case, it should be remembered that the approximation to the third of the husband's estate in the allowance of alimony, has been in cases where the wife has obtained a divorce for the fault of the husband. Here, the husband has obtained a divorce for the fault of the wife. This fact should have a material bearing upon the amount of the alimony.

Let us turn now to the particular facts of this case. Aside from the amount of the husband's property, the facts bearing upon the question of alimony are substantially these: The wife brought little or nothing to the husband, a bedstead and bedding; nor did he have very much at the time of the marriage—about $1,500. He is a lawyer of moderate practice, having but recently entered the profession; his income from

Zuver v. Zuver.

his personal earnings is about five to seven hundred dollars per year; the balance of his income, about $1,000 per year, is derived from the rent of the hotel property and the tenements on the east part of the homestead lot. Both parties are alike able to work in their respective spheres, and have been accustomed so to do from youth up to date. They were married January 1, 1861, and lived together up to November 25, 1870. The plaintiff was 38 years of age at the separation; the defendant probably younger, but her precise age is not given in the evidence.

Under these circumstances we deem it right and proper to adjudge to the wife as permanent alimony, to be held by her absolutely and in her own right and fee, all the east part of lot six (6) in block sixteen (16), in Missouri Valley, lying east of a line six feet east of the homestead, where the defendant now resides, and drawn across said lot running at a right angle with Erie street, together with the tenements situated thereon.

And further, that the defendant shall have the right to use and occupy the west part of said lot from the line aforesaid, it being the homestead, and where she now resides, free of any rent or charge therefor, so long, and so long only, as she shall retain the care and custody of any of the children under sixteen years of age now born. The taxes and assessments upon the said homestead, or west part, shall be paid by the plaintiff, but the defendant must keep the property in repair and pay the expenses thereof.

The title to the east part of the lot aforesaid, and the right to use and occupy the west part as above, is in full for her alimony and will be a bar to any claim for dower or distribution in the property of the husband heretofore or hereafter acquired. But the plaintiff will be required to pay off and discharge all liens and incumbrances upon the whole of said lot six, so that the title to each part shall be entirely free and clear and perfect, and to secure that end, the judgment in this case will be made, declared and held to be a lien upon all other real property owned by him for the payment and satisfaction of the liens and incumbrances thereon, and for the payment

of the taxes upon the west part of said lot as above described. The plaintiff will also be held to comply with the modified order for temporary alimony, to-wit: the payment of $100 cash and $50 in an accepted order for goods out of the store; and if not complied with within sixty days after final entry of judgment in this case, an execution may issue for the whole amount, $150.

III. The precise ages of the children cannot be determined from the testimony before us; but it appears that the youngest was born about a month after the separation, or about January 1, 1871, and that the four others were severally born at periods of time, each preceding the other respectively about two years. Their names and approximate ages are now as follows: James, aged ten years; Lizzie, eight; Annie, six; Ella, four, and Willie, two years. The custody and care of the two elder children, to wit, James and Lizzie, will be awarded to the plaintiff; the custody and care of the three younger, to wit, Anna, Ella and Willie, will be awarded to the defendant. This care and custody may be hereafter changed, as the changed (if such shall be the) circumstances or conduct of the parties, or the intelligent and unbiased preferences of the children, respectively, may show to be right and proper, and for the best interests of all.

The plaintiff will be required to pay to the defendant for the support, maintenance and education of the said three children so long as the said defendant shall support, maintain and educate them, the following sums monthly in advance, commencing with the first day of the month after entering this decree, to-wit: for Annie, $6 per month; for Ella, $5, and for Willie, $4 per month, up to the first of January following the entry of the decree. From and after that date, $1 per month shall be added and paid for each during that year; and on the commencement of each year thereafter, $1 per month shall be added and paid for each, until they shall severally have $7 per month each, which is the highest sum the plaintiff shall be required to pay for the support, maintenance and education of any one of the said three children.

And this payment shall continue no longer than till said children attain the age of sixteen years respectively. In case of default in the payment of the said sums, for a period exceeding thirty days, an execution may issue for the amount in arrear after ten days' notice in writing to the plaintiff, that it will be applied for.

Each of the parents will be allowed to visit, and to receive visits from, the children, and they to visit each other, at suitable times, in proper intervals, and on holidays and special occasions. Neither party shall remove either child from the county, except upon the consent of, or upon leave given by the court after ten days' notice to the other party. The plaintiff will pay all the costs. The cause will be remanded to the district court with directions to enter a judgment in accordance with this opinion.

Reversed.