The Union National Bank of Chicago v. Barber.

---

THE UNION NATIONAL BANK OF CHICAGO v. BARBER ET AL.

1. **Promissory Note**: HOLDER OF: WHEN TAKEN AS COLLATERAL. One who receives a promissory note as collateral security for an antecedent debt, upon which no extension is granted, does not become a *bona fide* holder for value.

2. ——: ——: PRESUMPTION OF OWNERSHIP. The holder of a promissory note is presumed to be the owner thereof by a *bona fide* transfer for value, but such presumption is rebutted by evidence showing that the note is in fact the property of another, from whose possession it was procured by fraud.

3. **Practice**: PLEADING: WAIVER OF IRREGULARITY. Where a material allegation is omitted from a pleading, but the adverse party fails to demur thereto, and himself tenders an issue upon the point, which issue is found against him, the judgment based on such finding will not be reversed on account of the irregularity.

*Appeal from Benton District Court.*

TUESDAY, OCTOBER 4.

ACTION to foreclose a mortgage given to secure two promissory notes executed by the defendant Barber to one J. C. Fulkerson, and made payable to him or bearer. The intervenor, S. B. Fulkerson, claimed to own the notes. The maker of the notes, Barber, makes no defense, and the only question presented is in regard to the ownership. The court found that they were owned by the intervenor, and dismissed the plaintiff's petition. The plaintiff appeals.

*Preston Bros.*, for appellant.

*Gilchrist & Haines*, for appellee.

ADAMS, CH. J.—The intervenor averred in his petition that he purchased the notes of the payee through one Twogood as his agent; that Twogood retained the notes for collection; that while they were so held by Twogood, one Elliott, a partner of Twogood, wrongfully obtained possession of the notes, and wrongfully and fraudulently indorsed and transferred the same to the plaintiff. He further averred that the plaintiff has no right or interest in them, but that they belong to him. He did not aver that the plaintiff is not a *bona fide* holder for value. But the plaintiff for answer to the petition for intervention not only denied the allegations of the petition, but averred that it was a *bona fide* holder for value, and this averment the intervenor by reply denied.

Upon the trial the plaintiff introduced in evidence the notes. The intervenor then introduced evidence which proved very clearly all the allegations of his petition. The plaintiff then introduced evidence showing that it took the notes from Elliott as collateral security for indebtedness due from Twogood & Elliott, and without notice of the true ownership. Upon cross-examination of the plaintiff's witnesses it was

made to appear. that the indebtedness for which the notes were taken as collateral security was in part, at least, an antecedent indebtedness, but it was not shown by them or any other witness that the indebtedness. was wholly such; nor was it shown that no extension was given on indebtedness that was confessedly antecedent.

But the plaintiff insists that if it should be conceded that the indebtedness was wholly antecedent, and that no extension was given, it should nevertheless be allowed to recover as a holder for value. In support of this proposition the plaintiff cites *Crosby v. Tanner*, 40 Iowa, 136. But in our opinion that case is not applicable. The question determined there was as to whether the equity of a third person, who was not a party to the note, could be set up to defeat the mortgage by which the note was secured, and simply upon the ground that the holder took the note after maturity. It was held that such equity could not be set up. The question in the case at bar is as to whether the intervenor's title can be defeated by reason of the wrongful indorsement and delivery made by Elliott to the plaintiff. It certainly cannot unless the plaintiff is: a holder for value. Now the mere fact that the plaintiff took the notes as collateral security would not show that it is a holder for value. It would not be such if they were taken wholly as collateral security for an antecedent indebtedness, and no extension was given. *Ryan v. Chew*, 13 Iowa, 589. As the evidence fails to show that the notes were taken wholly as collateral security for an antecedent indebtedness without extension, and at the same time fails to show that they were not, we have to determine whether under the evidence the plaintiff is to be *presumed* to be a holder for value.

1. PROMISSORY NOTE: holder of: when taken as collateral.

The plaintiff claims that the fact that the notes came from its possession is sufficient to raise a presumption that it paid value. Authority can be found to support this proposition, and for the purposes of this opinion it may be conceded. But if such presumption was raised by

2. ——: presumption of ownership.

the evidence of possession we think it was overcome by the evidence introduced by the intervenor showing his title to the notes, and the wrongful indorsement and delivery by Elliott to the plaintiff. In 2 Daniel on Negotiable Instruments, 412, the author says: "The legal presumption is that the holder of a note is not a finder, but a *bona fide* transferee for value. When, however, the loss of the original owner is shown, the burden of proof shifts and the holder must show that he acquired it in good faith for value." See, also, *Morton v. Rogers*, 14 Wend., 581; *Graves v. American Exchange Bank*, 17 N. Y., 205; *Matthews v. Poythress*, 4 Geo., 305; *Gerrard v. Pittsburgh*, 29 Pa. St., 157.

The rule enunciated finds support also in numerous analogous decisions where the maker proves that the note was procured from him by fraud. *Listerman v. Field*, 9 Gray, 33; *Perrin v. Noyes*, 39 Me., 384; *Smith v. Sac County*, 11 Wall., 139; *Devlin v. Clark*, 31 Mo., 22; *Perkins v. Prout*, 47 N. H., 387; *Harbison v. Bank of Indiana*, 28 Ind., 133; *Bailey v. Bidwell*, 13 M. & W., 73; *Fitch v. Jones*, 32 Eng. Law and Eq., 134. The same doctrine is recognized by the text writers. Chitty on Bills, 260; Byles on Bills, 190; 2 Parsons on Bills and Notes, 438; Story on Promissory Notes, 196.

The principle upon which the rule is based is said in 1st Daniel on Negotiable Instruments, 611, to consist in the fact that "there is a natural presumption that an instrument so issued—that is, by fraudulent procurement—would be quickly transferred to another, and unless he gave value, which could be easily proved if given, it would perpetrate great injustice and reward fraud to allow him to recover."

Why for the same reason the holder of a negotiable note which he had received from a person who had stolen it, or otherwise wrongfully obtained it and made a fraudulent transfer of it, should not upon an issue as to title have the burden of proving, otherwise than merely presumptively by evidence of possession, that he paid value, we are unable to

discover.   The ease with which the holder could prove that he paid value if he did pay it, and the difficulty with which the true owner could prove that the holder did not pay value if he did not pay it, would not be less than in a case where the validity of a negotiable note is drawn in issue in an action against the maker.

It is true that in *Kelly v. Ford*, 4 Iowa, 140, a different doctrine might seem to be held.   That was an action upon a promissory note in which the maker pleaded fraud.   Stockton, J., said:   " A jury would not be authorized by any evidence of fraud to infer that the note was assigned after maturity, or that no consideration was paid for it by the holder."   The view which the learned judge took of the law is further shown by a remark made concerning an instruction which the defendant asked and which was refused.   The instruction was in these words:  " Where fraud or illegality is established there is a presumption of law that there was no consideration paid by the assignee to the assignor for the transfer of the note; but the presumption of law is that the payee not being able to sue in his own name has handed it over to another person to sue upon it for his benefit.   This presumption, so raised by law, must be rebutted by the holder showing that he gave value for the note."

After holding that the instruction was properly refused because there was no evidence of fraud, the learned judge proceeded to remark that the instruction was incorrect and properly refused, because it did not rightly state the law.   In support of his view he cites *Morton v. Rogers*, 14 Wend., 580, and *Vallett v. Parker*, 6 Wend., 621.   An examination of these authorities, we think, will show that the learned judge did not apprehend their full import.   Besides, as no fraud was shown it was unnecessary to consider the question as to what the correct rule would have been if it had been shown.   We can hardly think, therefore, that the attention of the court was drawn to this question.

We have now to consider one other point made by the

plaintiff, and that is that the pleadings did not justify the de-

**3. PRACTICE:** cree rendered, even if the evidence did. The plaint-
pleading:
waiver of iff contends that it was incumbent upon the inter-
irregularity. venor, in order to maintain his claim, to aver in his
petition for intervention that the plaintiff did not pay value
for the notes.

It was certainly not incumbent upon the plaintiff to aver
in its petition that it paid value. As against the maker having
no defense the plaintiff was entitled to recover even if it held
the notes wholly as collateral security for an antecedent in-
debtedness and without other consideration. It would, indeed,
as against the maker having no defense, have been entitled to
recover if it had held the notes as a gift. The intervenor, in
order to affect the plaintiff's right to recover, was obliged to
rely upon a fact not material prior to intervention. It is pos-
sible, therefore, that the petition for intervention was demurr-
able. That it was would seem to be indicated by *Clapp v. Ce-
dar County*, 5 Iowa, 15, an authority cited by the plaintiff and
relied upon by it with great confidence. In that case it was
held in substance that in order to let in the defense of fraud
in the procurement of a negotiable instrument as against a
holder who has taken the instrument before maturity without
notice, it is incumbent upon the maker to aver that the holder
did not pay value.

We have no occasion now to express an opinion as to the
correctness of that ruling. If it should be conceded to be cor-
rect it would not change the rule of evidence above expressed.
The averment that the holder did not pay value would be
presumptively supported by proof by the defendant of the
fraud, where that was the defense, or, in a case like the pres-
ent, by proof by the intervenor of the true ownership, and
wrongful abstraction and transfer.

The important consideration, in determining the correctness
of the decree below, is, that while it may be that the inter-
venor should have averred in his petition for intervention that
the plaintiff did not pay value, yet the petition for inter-

vention was not demurred to, but on the other hand the plaintiff tendered an issue upon this point by averring that it did pay value; and upon that issue the parties went to trial and upon that issue the court must have found that the plaintiff did not pay value. The evidence being sufficient to support the finding we cannot reverse by reason of a mere irregularity, if there was any, in the manner in which the issue was made. *Cotes v. City of Davenport*, 9 Iowa, 227: *Atkins v. Faulkner*, 11 Iowa, 327; *Cook v. Woodbury County*, 13 Iowa, 21. In our opinion the decree must be

AFFIRMED.