Whispell *v.* Whispell.

ALBANY GENERAL TERM, September, 1848. *Harris, Watson, and Parker,* Justices.

### WHISPELL *vs.* WHISPELL.

On a bill filed for a limited divorce, the acts of violence and cruel treatment specifically alleged present the matters in issue to which the proof is to be directed; but under the general allegation in the bill of complaint the court will look at the general conduct of the defendant towards the plaintiff, for the purpose of understanding more fully the circumstances complained of, and the true relations existing between the parties.

To authorize the interposition of a court of equity for the purpose of declaring a limited divorce, there must in all cases be ill treatment and personal injury, or a reasonable apprehension of personal injury.

Where such personal injury has been proved, the court will consider also the language and conduct of the defendant designed to wound the feelings of the wife or to destroy her happiness. And grossly indecent language spoken to, or of, the wife, by the husband, will find neither palliation nor excuse in the fact that the parties have not enjoyed the advantages of cultivated society.

If condonation may be inferred from cohabitation, the presumption may be rebutted by the accompanying circumstances.

Condonation is always subject to the condition that the husband shall afterwards treat his wife with conjugal kindness.

IN EQUITY. This was a bill filed in the late court of chancery, by the wife against her husband, for a separation *a mensa et thoro* on the ground of cruel treatment. The defendant answered, denying the allegations in the bill, and a replication was filed, and proofs were taken. The parties resided at Shan-

*John Van Buren*, of Kingston, for the plaintiff.

*T. R. Westbrook & M. Schoonmaker*, for the defendant.

*By the Court*, PARKER, J. The bill of complaint in this cause was filed in the late court of chancery, for a separation from bed and board, or a limited divorce, under the provisions of the revised statutes. (2 *R. S. 3d ed.* 206, § 50.) Such sep-arations may be decreed for the following causes: 1. The cruel and inhuman treatment by the husband, of the wife. 2. Such conduct on the part of the husband, towards his wife, as may render it unsafe or improper for her to cohabit with him. 3. The abandonment of the wife by the husband, and his refusal or neglect to provide for her. The plaintiff in this case seeks relief on the grounds stated in the first two subdivis-ions of the section.

The parties were married on the 3d of May, 1845, and lived together until the 4th of September, 1846. It is alleged by the plaintiff that within three months after the marriage the defen-dant commenced a course of harsh and tyrannical treatment towards her, and continued the same, with slight interruptions, till the time of the separation. And in accordance with the requirement of the 51st section of the statute, the plaintiff al-leges specifically several acts of violence and cruel treatment committed by the defendant. These specific allegations pre-sent the matter in issue to which the proof is to be directed. (2 *John. Ch. Rep.* 224. 6 *Id.* 347.) Though it is also proper, I think, under the general allegation in the bill of complaint, to look at the general conduct of the defendant towards the plaintiff during their cohabitation, for the purpose of under-standing more fully the particular circumstances complained of, and the true relations existing between the parties.

The proof in support of the complaint rests principally upon

the evidence of Mary Wolven and Catharine Wolven, daughters of the plaintiff by a former marriage; and it is undoubtedly true that their testimony is to be critically examined, and I think it should be taken with some grains of allowance. But I do not regard the evidence of Harriet Whispell and Daniel C. Whispell, the defendant's children by a former wife, as balancing the testimony of Mary and Catharine Wolven. On the contrary, their evidence is, to some extent, of a negative character. In some particulars they corroborate the testimony of the plaintiff's witnesses; and in those respects in which they contradict them, and where we are required to decide between conflicting testimony, I find myself compelled to discredit the testimony of Harriet Whispell. Her statement in regard to her letter weighs strongly against her. As to the genuineness of the letter the plaintiff's evidence is conclusive. It does not rest upon the opinion of hand-writing alone, but is placed beyond question by the testimony of the person receiving it, and of another who saw Harriet Whispell write it. There is also evidence of statements made by her to other witnesses, not reconcileable with her testimony. But the plaintiff's case does not rest on the testimony of her daughters alone. Other witnesses prove acts and language of the defendant that go far in corroboration, and are entirely inconsistent with the pretence of kind and proper treatment on his part.

To authorize the interposition of this court, there must, in all cases, be ill treatment and personal injury, or a reasonable apprehension of personal injury. Words of menace, accompanied by a probability of bodily violence, will be sufficient. It may be enough if they are such as inflict indignity and threaten pain. It will be the duty of the court to release the suffering party from continuing cohabitation under such treatment. (*Shel. on Mar. & Div.* 430. 33 *Law Lib.* 238. *Neeld* v. *Neeld*, 4 *Hagg. Eccl. Rep.* 270.) Spitting on the wife is a gross act of cruelty. (*Clohen's case, Hetley*, 149. *D'Aigular* v. *D'Aigular*, 1 *Hagg. Eccl. Rep.* 776.) So, a groundless and malicious charge against the wife's chastity. (*Durant* v. *Du-*

Whispell *v.* Whispell.

*rant,* 1 *Hagg. Eccl. Rep.* 769. *Lockwood* v. *Lockwood,* 2 *Curteis' Eccl. Rep.* 281.)

The evidence in this case proves that force was resorted to, and personal violence inflicted; and there was also a violence to the feelings of the plaintiff, still more cruel and inhuman. The indignities offered her were of the most brutal character; and the statements made by the defendant concerning her, in his conversation with others, prove him as destitute of shame as he was of kindness and affection. If there was not a mutual attachment existing between these parties, strong enough to protect them against personal controversies, the relations they had voluntarily assumed imposed on them duties they were not at liberty to disregard; the first of which was the exercise of kindness and forbearance. It is certain neither of these were practised by the defendant. In their stead, he exhibited throughout most of the time of his cohabitation with the plaintiff, a cruel and tyrannical disposition, and a course of conduct more brutal than human. It is said his grossly indecent language, spoken to, and of, his wife, is to find palliation, if not excuse, in the fact that the parties moved in a circle of life less refined than others who have enjoyed the advantages of a more cultivated society. But I deny the application of the rule to a case like this. The *decencies* of life belong equally to all classes; and in none are they more carefully cultivated and more faithfully observed, than among the respectable farmers of our country. The human heart is the same in every grade of society. From it flows, in the humblest, as well as the highest, walk of life, the same current of affection that surrounds the domestic hearth with gentle conduct and kind influences. Delicacy of feeling belongs as well to the cottage as to the statelier mansion. The mind may be cultivated by study, and the manners polished by refined association; but the natural affections of the heart are rarely improved by contact with the world. In their native purity they recoil at any exhibition of indecency either in word or deed. Want of cultivation may excuse an unrefined or even coarse expression, but it forms not the slightest apology for indecent conduct or obscene language.

Whispell *v.* Whispell.

Considering the whole evidence, on both sides, I think the allegation of cruel and inhuman treatment is fully established. This brings me to the consideration of the question whether there has been a condonation, by the wife.

The defendant must establish this defence by satisfactory evidence. He relies upon the confessions of the plaintiff and upon the assumed fact of the subsequent cohabitation of the parties. It is proved that in August, before the separation, the plaintiff said the defendant would not keep her children, and if her children could not stay she would not. This evidence may have some bearing on the question of cruelty, as tending to exhibit one of the causes of their differences; but I think it has none on that of condonation. Nor do I think it is satisfactorily shown that there was a reconciliation and cohabitation between the parties, after the commission of the offences complained of, in August, 1846. It is proved that the defendant said, in the latter part of August, that his wife would not sleep with him. And on the last of August she left his house to go to her brother's. She returned on the 3d of September, and the high words that passed between the parties on the night of that day repel the presumption of a reconciliation. On the 4th of September she left with her brothers. If condonation may be inferred from cohabitation, the presumption may be rebutted by the accompanying circumstances. Even where there is a condonation, it is always subject to the implied condition that the husband shall afterwards treat the wife with conjugal kindness; and condoned cruelty will be revived by subsequent acts of cruel treatment, which of themselves would not have been sufficient to justify a separation. (*Burr* v. *Burr*, 10 *Paige*, 20. *Beebe* v. *Beebe*, 1 *Hagg.* 789. *Durant* v. *Durant*, *Id.* 733.) On the whole, therefore, I think the defence of condonation has not been established. The plaintiff is entitled to the usual decree for a separation, and the defendant must pay the costs of this suit, to be taxed.

The plaintiff's children have no claim on the defendant, and the plaintiff has a right of dower in the farm of her first husband, from which she derives an annual income, which must

be secured to her.   The defendant, though a farmer in comfortable circumstances, has five children to support and educate. I think, under all the circumstances, it is not a case calling for the allowance of alimony.

