# SUPREME COURT.

## CAROLINE A. DAVIES agt. THOMAS DAVIES.

*A limited divorce* may be granted under the Revised Statutes,to a married woman for cruel and inhuman treatment by the husband ; and also for such conduct on the part of the husband towards his wife, as may render it unsafe and improper for her to live or cohabit with him.

It is the duty of the wife, if consistent with her safety, to live with her husband, and bear with his infirmities and ill temper—husband and wife should not be separated lightly or without good cause. But if his conduct be unbearable, and the wife be in reasonable apprehension of personal violence and discomfort, and the conduct of the husband be inconsistent with her safety, she may leave him, and this court will grant the releif demanded.

Where the wife, after the ill treatment of the husband towards her, continues to live and cohabit with him as before, the former ill treatment is condoned, and a limited divorce will not be granted therefor, but, if after such condonation, the ill treatment is continued, though of less degree, the original cause of action is revived, and will be deemed in life for the purposes of decreeing separation upon the whole case as presented. Her case, under such circumstances, rests upon a review of all his conduct towards her during their married life.

The question in these cases is, had the wife reasonable ground to apprehend personal injury? Was she exposed to physical injury from continued cohabitation? And in this connection, words of menace accompanied by a probability of bodily violence will be sufficient.

In cases of this character, though the wife be not entirely faultless, and though her language and conduct may have been in many particulars irritating and provoking, still, all due allowance is to be given to human frailty. The conduct of the husband and his treatment, as provocative of her conduct and behavior ; the position and standing in life, of the parties, their degree of refinement, and all the circumstances of the case as presented, are to be examined and considered by the court in granting or refusing the relief prayed for in the complaint.

*Seventh District: Special Term, April,* 1869.

ACTION for limited divorce. This action was brought by Caroline A. Davies against Thomas Davies. The parties were married in February, 1863. Previous to the marriage, the plaintiff had been the defendant's housekeeper—There were no children born of the marriage—No difficulty occured between the parties till about January, 1866. About that time, a young woman, known to both parties, came to their house as a visitor, and soon after her arrival, the plaintiff saw

or suspected a too close intimacy between this young woman and her husband, the defendant. This gave rise to much difficulty, and the plaintiff repeatedly remonstrated with the defendant on the subject, and at times made somewhat harsh accusations of adultery between them. Several acts of intimacy, not amounting to proof of adultery, were sworn to by the plaintiff on the hearing before the referee, who took the testimony in the case. From this time, there was estrangements and repeated quarrels between the plaintiff and defendant on the subject of this young woman, the plaintiff insisting that she should leave the house, the defendant insisting upon her staying to conclude her visit. During these altercations, violent and unseemly language was frequently used by both parties, the defendant using profane and in some instances indecent language towards his wife, calling her unchaste and reproaching her on account, as he termed it, of her homeliness and unattractive appearance. She retorted, accusing him of illicit intercourse with the young woman in question, of attempting to poison her, the plaintiff, and at times when excited by his actions and language, used improper language, calculated to irritate and provoke. The defendant several times, threatened her life, and personal violence toward her. This state of affairs continued until July, 1866, when it culminated in a serious quarrel between the plaintiff and defendant, during which, the defendant choked the plaintiff, committed severe personal violence upon her, and struck her a blcw with his fist upon the left temple, severing the temporal artery, and endangering the plaintiff's life.

The plaintiff after this continued to live and cohabit with the defendant, but their relations were by no means pleasant or agreeable. For a few days, at intervals, they would live quiet and peaceably, when the smouldering fires would again burst forth, and violent and abusive criminations and recriminations were the result. He at times would continue his threats of personal violence and apply to the plaintiff op-

probrious names and epithets, and she would repeat her
charges. of adultery and reply to the defendant in harsh
terms and language. So they lived together down to Octo-
ber, 1866, when, one Sunday morning they had another
quarrel, during which the defendant, raised his boot and
threatened the plaintiff that "if she did not go out of the
room pretty lively, he'd knock it over her head." Defen-
dant also conducted himself at this time in a very violent
and abusive manner toward the plaintiff, telling her she
should go to states prison, and shaking the coffee pot in her
face, using at the same time profane and abusive language
towards the plaintiff, saying " he wanted nothing more to do
with her, that if it was not Sunday, he would throw her
out of doors, that he would throw or boot her friends out
of the house if they came to see her," and conducted him-
self with great violence and impropriety.

On the Tuesday following, the plaintiff left the defendant's
house, and went to her brother's to reside. She testifies,
" given up all hope that there was any safety or peace of
mind any further."

This action was commenced December 28, 1867.

JOHN C. CHUMASERO & C. C. DAVISON, *for plaintiff.*
J. H. MARTINDALE, *for defendant.*

*By the court,* E. DARWIN SMITH, J.   It is perfectly evi-
dent I think, from the proofs in this action, that the parties
cannot live peaceably together and perform their proper con-
jugal duties towards each other.   The spirit and temper of
both of them forbid it.   The defendant had confessedly lost
all attachment and respect for his wife, and clearly desired
to be rid of her, before she left him.   As they must there-
fore live apart hereafter, the question presented to the court
is, whether such separation can and ought to be legalized, so
as to permit them to live thus apart, without further strife
and in apparent decency and quiet.   It is the duty of the

wife to live with her husband and put up with his ill nature
and petulance, and bear with his infirmities, if she can do so
with safety to her person and without great personal appre-
hension and discomfort.   Husband and wife should not be
lightly separated or without good cause.

Under our statute, a limited divorce or separation from
bed and board may be granted to a married woman for cruel
and inhuman treatment by the husband, and also for such
conduct on the part of ·the husband toward his wife, as may
render it unsafe and improper for her to cohabit with him,
(2 *Revised Statutes, chap.* 8, *part* 2, *article* 4, *p.* 186).

I think there can be no doubt that the defendant's treat-
ment of his wife on the 23d day of July, 1866, as they both
describe the scene and transaction, was such cruel and inhu-
man treatment as would warrant a divorce according to all
the cases. (*Vid.* 10, *Paige* 22; *Whispell* agt. *Whispell,* 4 *Barb.,*
220 ; 17 *Abb.,* 21).   But the plaintiff continued to cohabit
with the defendant afterwards, until about the last of Octo-
ber, 1867, when she left his house—a period of about fifteen
months—this continued cohabitation for so long a period
after the ill treatment of July, 1866, implies a forgiveness of
such treatment, and a purpose to retain her conjugal relations
with the defendant, and to trust to his good treatment for
the future.   After such a lapse of time and such forgiveness,
the court would not grant a divorce for such ill treatment, if
in the interval, the defendant had treated his wife kindly
and given her no further cause of complaint.   The wife
must, under such circumstances, be deemed to have elected
to ·abide with her husband and trust to his assurances of
amendment and future good treatment.   But if she has oc-
casion to complain of his treatment afterwards, she is not
debarred the right to refer to such ill treatment, and bring the
same forward as a part of her ground for the belief that she
cannot safely continue to cohabit with him.   Her case rests up-
on a review, under such circumstances, of all his conduct to-

wards her during their married life, and not upon any single act.

The question at all times in this class of cases, is, had the plaintiff reasonable ground of apprehension in regard to her personal safety at the time she left her husband? Had she any ground to believe that she was exposed to any physical injury by a continuance of her cohabitation with her husband? (1 *Bishop on Marriage and Divorce*, § 715, 16, 17). There must be in all cases ill treatment and personal injury, or a reasonable apprehension of personal injury, (*Whispell* agt. *Whispell supra* 219). Words of menace, accompanied by a probability of bodily violence will be sufficient, (*id.*)

The testimony of the wife in this case, if believed, I think fully establishes the fact, that the plaintiff was more or less exposed to personal violence during her cohabitation with the defendant from the time of her recovery after the injury inflicted upon her by the defendant in July, 1866, until she finally left him. She testified, that he made frequent threats of personal violence. He threatened at one time, to pitch her out of the sleigh, if she got in, and give her a horse-whipping.

On Sunday evening, before she left him, after some altercation between them, she says "he raised his boot, and said: "if I did not go out of the room pretty lively, he would knock it over my head." On the same morning at breakfast, after some conversation about the "young woman" Helen, who I should think had been the chief cause of the jealousy, suspicion and trouble between these parties, she says, "he jumped up, and took the coffee pot and commenced shaking that in my face." She also testifies, that, on this occasion, he also said, "he didn't want to have anything more to do with me." He also said, "if it was not Sunday morning, he would throw me out of doors."

These instances of assault and menaces, and threats of personal violence, tend to prove that he was capable of using such violence upon her person, and gave, I think, ground

of reasonable apprehension on her part, that she might suffer personal injury if she continued to cohabit with him.

It is true that Mr. Davies denies much of this testimony, but I am inclined to think that I should rather believe the plaintiff than the defendant when their testimony comes in conflict, and for the reason that her statement is affirmative, and his, simply denial, and also that he admits much that tends to coroborate her statements. He admits the personal violence used in July, 1866, and the use of frequent harsh language towards her, and the threat to throw her out of the sleigh, and also for the reason, that the testimony upon the whole, shows that he possessed a violent temper and had clearly lost all affection for his wife and wished to be rid of her, and was just in that frame of mind when she left him, to do just what she says, he threatened to do. This view is strongly confirmed by the letter produced, which he wrote soon after she left him, and when his passions were not excited by any immediate provocation upon her part. In that letter to her brother, he writes, that he proposes to commence a suit in the courts for a divorce ; and says also : "I have made up my mind, the foolish, simple, but black-hearted woman will never live with me again." This letter is dated November 11,1867, and must have been written ten days or two weeks probably, after the plaintiff left the defendant's house.

It is quite apparent that the plaintiff did not behave well herself, that her language and conduct were in many particulars unbecoming and provoking. Perhaps, however, it was about such language as might be expected from a woman in her situation and grade of life, and of her state of refinement, rendered jealous, and aggravated by the defendant's treatment of her in keeping another and a handsomer woman in the family, under the circumstances detailed in the evidence, and a woman too, whom he seemed to admire and treat with more kindness and attention than his wife. Many of the plaintiff's fears and suspicions were undoubtedly

groundless, but they were probably honestly entertained and were caused by him, and were rather fostered than allayed by his conduct towards Miss Button, in the presence of his wife.

Upon the whole case, and a review of his whole conduct towards the plaintiff during the period of their whole cohabitation as husband and wife, I think I must find that his treatment of her was cruel and inhuman, and that she had when she left him, reasonable ground of apprehension of personal injury in case she continued to cohabit with him, and that her conduct towards him was not sufficiently culpable to debar her of her right to a divorce from bed and board, and a suitable provision for her support. I must therefore so decree, and direct a reference to some member of the bar to ascertain what would be, under the circumstances, a suitable provision to be made by him for her support and alimony.