MARY G. ATHERTON, Respondent, v. PETER LEE ATHERTON, Appellant.

*Domicile of a wife separate from her husband's — what is cruel and inhuman treatment — first offense revived by subsequent offenses, after condonation thereof — foreign judgment of divorce — when not effective within the State of New York — contracts between a husband and wife, after their separation — a measure, after a judgment of separation, for maintenance of the wife — not for a child — remarks of the trial judge at the trial — limit of power to award counsel fees.*

A married woman may have a domicile in a jurisdiction other than that of her husband, when the conduct of the husband has been such as to entitle the wife to an absolute or limited divorce. She may acquire a separate domicile whenever it is necessary for her to do so, but the right to do so springs from the necessity of its exercise.

Cruel and inhuman treatment does not necessarily imply such treatment as places a wife in physical fear of her husband. The conduct of the husband may produce such mental agony in the wife as to be even more cruel and inhuman than if mere physical pain had been inflicted, and where the conduct of the husband towards the wife is of such character, it justifies a court in freeing her from the necessity of submission to such treatment.

Cruelty of a husband to his wife which has been condoned will be revived by subsequent acts of cruelty, which of themselves would not be sufficient to justify a separation; the condonation of the prior offense is always subject to the condition that the husband shall thereafter treat the wife with conjugal kindness.

A wife left her husband, who resided in the State of Kentucky, and went to and resided within the State of New York, where she resided prior to her marriage. An action was subsequently commenced by the husband in the State of Kentucky to procure a divorce, under the statutory law of that State, on the ground of abandonment, in which the wife was not personally served with process within the State of Kentucky, nor did she appear in the suit, nor in any way consent thereto, nor do any act which gave the judgment binding force upon her in the State of New York.

*Held*, that the judgment was wholly inoperative within the State of New York, was not binding upon the wife, nor did it constitute a bar to her right to maintain an action for a separation against her husband in the State of New York in case he personally appeared in an action brought therefor in that State.

After a husband and wife have separated a contract may be made between them, through the intervention of a trustee, which is effective to bind the husband to contribute the sum therein provided, for the future support of the wife; and such agreement, so long as it remains unrevoked, is the proper measure of compensation which the husband should render for the maintenance of his wife after the dissolution of the marriage tie, but such agreement is not in any

way binding upon the child of the parties thereto, although provision for its maintenance is made therein.

The court in a final judgment, in favor of the wife in an action brought by her against her husband for a separation, may give such directions as the nature and circumstances of the case require; in particular, it may compel the defendant to provide suitably for the education and maintenance of the children of the marriage, and for the support of the plaintiff as justice requires, having regard to the circumstances of the respective parties.

During the progress of the trial of an action brought by a wife to obtain a judgment of separation from her husband, the trial judge, after having heard considerable evidence offered by each of the parties to the suit, in the presence of both parties and of their counsel, addressed himself to them in language of expostulation and admonition. In the course of his remarks he said: " I am satisfied that neither of these parties are bad people. They intend to be good people, Christian people, and considering the infant, dear to both, they ought to contrive to get together and be man and wife, and especially father and mother. * * * It seems to the court that whatever humiliation it may bring for the time being, or whatever sinking of self may be required, it is their duty to join hands over the cradle of the little baby."

*Held,* that no legal error was committed, and no sufficient ground was made manifest by reason thereof for interfering with the final results reached by the trial court upon the questions of fact.

The power of the court, in an action brought by a wife to procure a separation from her husband, to make an allowance to the wife for counsel fees and expenses, is limited to such sums as may be necessary to enable her to carry on or defend the action; and if an application be made for counsel fees and other expenses after the trial of the action and its determination in favor of the plaintiff, without showing in the moving papers that the money is needed in order to enable her to further defend the action, or to maintain or prosecute her rights under the judgment, an allowance thereof is unauthorized.

APPEAL by the defendant, Peter Lee Atherton, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of Oneida on the 8th day of January, 1894, upon the decision of the court rendered after a trial at the Oneida Special Term adjudging a separation between the plaintiff and defendant; awarding alimony to the plaintiff; providing an allowance for the support of their child, and awarding taxable costs and an allowance of $1,000 in favor of the plaintiff against the defendant.

*Alex. P. Humphrey, Seth C. Adams* and *A. M. Beardsley,* for the appellant.

*W. & N. E. Kernan* and *A. M. Mills,* for the respondent.

Hardin, P. J. :

October 17, 1888, at Clinton, the parties to the action intermarried, and after spending a portion of their wedding trip at Utica and Old Point Comfort, they repaired to the city of Louisville, Ky., to make their residence with the parents of the defendant in that city, and they continued to live and cohabit together until the 3d day of October, 1891, when, after a distressful scene, in which violent language and excited and severe words were used between the parties, and the defendant had made a threat to take the infant child, which was born to them on the 8th of January, 1890, away from the plaintiff, and to remove it from her care and supervision, and after she had remonstrated and sought to induce him by persuasion and by putting her arms around his neck and begging him to change his avowed purpose, and after he had resolutely, angrily and forcibly thrust her away from him, in the presence of his mother, she repaired to her room and taking the child went out of the residence of the defendant to Mrs. Belknap's, a neighbor, and remained there for two or three days, and subsequently went therefrom to the Galt House hotel and remained for a period of about a week, when her friends and counsel came to her; and during the period she was there at the Galt House an agreement was entered into, reciting that an actual separation had taken place; also, reciting therein, viz. : " The undersigned, Peter Lee Atherton, and his wife, Mary G. Atherton, having ceased to live together as man and wife, without in any way acknowledging upon whom is the fault, or condoning the conduct of the one or the other which has led to the existing state of affairs, or preventing any consequence which may follow, or right which may arise to either party if such status shall continue, desire to provide for the best interest of their child, Mary Valeria Atherton." Upon the consummation of the agreement, the plaintiff with the child left the city of Louisville with the intent and purpose of ceasing to be a resident of the State of Kentucky, and returned to the home of her mother in the village of Clinton, N. Y., and acquired a residence in Clinton where she has continued to reside down to the time of the trial of this action.

Article 3 of the Code of Civil Procedure contains several sections providing for " action for a separation." In section 1763 it is provided that such an action may be maintained.     *  *  *  " 2. Where

the parties were married within the State and the plaintiff is a resi-
dent thereof when the action is commenced." In section 1768 of
the Code it is provided, viz.: "If a married woman dwells within
the State when she commences an action against her husband, as
prescribed in either of the last two articles, she is deemed a resident
thereof, although her husband resides elsewhere." The provisions
of the statute to which reference has just been made seem to recog-
nize the exception stated in *Hunt* v. *Hunt* (72 N. Y. 242), to the
effect that a married woman may have a domicile in another juris-
diction than that of the husband "when the conduct of the husband
has been such as to entitle the wife to an absolute or limited divorce.
She may acquire a separate domicile whenever it is necessary for
her to do so. But the right to do so springs from the necessity for
its exercise." Upon the evidence disclosed in the appeal book, as
well as upon the law, it must be assumed that the plaintiff was domi-
ciled in the village of Clinton at the time of the commencement of
this action, January, 1893, and had been so domiciled since her sepa-
ration from her husband, which occurred in October, 1891. It
was undoubtedly understood by the parties at the time of the exe-
cution of the agreement as to the separation that she should remove
from the State of Kentucky to the State of New York and join her
mother at the home in Clinton. And the evidence seems to indicate
that the defendant not only had knowledge thereof, but acquiesced
in such removal from the State of Kentucky to the State of New
York by the wife. Extensive findings of fact have been made by the
trial judge, and he reaches the conclusion that a case is made out
within the provisions of section 1762 of the Code, and that the
plaintiff is entitled to maintain the action because of the acts and
circumstances disclosed in the evidence by reason of the "cruel and
inhuman treatment of the plaintiff by the defendant," and "such
conduct on the part of the defendant towards the plaintiff as may
render it unsafe and improper for the former to cohabit with the lat-
ter." When making the findings of fact the trial judge was called
upon to review, consider and determine the force and effect of evi-
dence relating to the acts, doings and conduct of the respective
parties to and with reference to each other from the period of their
marriage on the 17th of October, 1888, to the period of their separa-
tion, October 3, 1891 (as well as some acts and circumstances there-

after), and to reach his conclusion after weighing the evidence in which there were very sharp and severe contradictions by the principal parties examined therein. Witnesses were called in behalf of the plaintiff tending to support much of her testimony, and witnesses were called in behalf of the defendant tending to support his version and narration of several of the important transactions that are disclosed in the evidence given by her, and tending to sustain the versions, acts and doings of the defendant as related by him. Although a very extensive argument has been addressed to this court upon the subject of the credibility of the plaintiff as a witness in her narration of the scenes and events and misfortunes which attended her in her married life, and we are pressed to say that her statements thereof are "most uncandid," and that "strong sidelight" is thrown against her by letters written, and her testimony somewhat shaken by witnesses who speak in behalf of the defendant as to some of the important transactions that she relates, and in some of her statements we can see that she has been mistaken, and in others she has, to some extent colored and magnified them; still, considering the evidence which tends to corroborate her, and, to some extent tending to establish important facts involved in the numerous inquiries that were opened at the trial, we are inclined to accept the conclusions of fact upon the essential features of the case as found by the trial court.

In *Lutz* v. *Lutz* (31 N. Y. St. Repr. 718), which was an action for cruel and inhuman treatment, VAN BRUNT, P. J., said: "The judgment of the referee in respect to the credibility of witnesses who have been examined personally before him should not be lightly disturbed, in view of the fact that he has the advantage of the personal attendance of the witnesses, and has been enabled to judge by their demeanor and manner of testifying, much in respect to their credibility. * * * Cruel and inhuman treatment does not necessarily imply such treatment as places a wife in physical fear of the husband. The conduct of the husband may produce such mental agony in the wife as to be even more cruel and inhuman than if mere physical pain had been inflicted; and where the conduct of the husband towards the wife is of this character it is certainly cruel and inhuman, and justifies the court in freeing her from the necessity of submission to such treatment." Numerous cases are found

in this State which construe the words "cruel and inhuman treatment," and which declare that "great cruelty and as much inhumanity may be manifested," and that acts and words may be construed as cruel and inhuman, although they cause no physical pain. (*Bihin* v. *Bihin*, 17 Abb. Pr. 26; *Whispell* v. *Whispell*, 4 Barb. 217; *De Meli* v. *De Meli*, 67 How. 32; S. C. affd., 120 N. Y. 485; *Fowler* v. *Fowler*, 33 N. Y. St. Repr. 746; *Waltermire* v. *Waltermire*, 110 N. Y. 183.)

Upon the case as presented at the Special Term it rested upon a review of all his conduct towards her and not upon any single act. (*Davies* v. *Davies*, 55 Barb. 130; 1 Bishop Mar., Div. & Sep. §§ 1561, 1652.)

While some of the early acts relied upon were apparently condoned, yet they were revived by subsequent acts of the defendant.

In *Burr* v. *Burr* (10 Paige, 20) it was held that condoned cruelty will be revived by subsequent acts of cruelty which of themselves would not be sufficient to justify a separation. And in *Whispell* v. *Whispell* (*supra*) it was said : "Even where there is a condonation it is always subject to the condition that the husband shall afterwards treat his wife with conjugal kindness."

After a careful consideration of the conflicting evidence, and all the facts and circumstances disclosed by the record, we are of the opinion that the learned judge was correct in his conclusion upon the whole case, when he said, "that the acts and conduct and treatment of the defendant of and towards the plaintiff during their married life were cruel and inhuman, and rendered it unsafe and improper for her to cohabit with him, and justified her in leaving the defendant as she did, and seeking a residence separate and apart from him ; " and the authorities to which we have referred sustain his conclusion of law reached upon the findings of fact in respect to the propriety of a separation.

(2) It is insisted by the learned counsel for the appellant that the Kentucky judgment was a bar to this action. Defendant was a native citizen of Kentucky, and has resided there all his life, and on the 17th of October, 1888, he was married to the plaintiff, a native of this State. At the time of the marriage the parties intended to make their home in and to reside in the city of Louisville, Kentucky. In pursuance of that intention they continued to reside there until

October, 1891, when the plaintiff "left the family abode." Under the statutes of Kentucky in force at that time, either husband or wife could procure a divorce from the other, if, without the fault of e complaining party, the other party should abandon the complaining party, and such abandonment should continue for one year, and it was provided in the statute law of that State that an action for divorce might be commenced against a person whose absence from the State was continuous for four months, by means of "constructive process." Such an action was commenced and such proceedings were had in virtue of the law of the State of Kentucky, which resulted in a judgment pronounced by the Circuit Court of Jefferson county, Kentucky, awarding the defendant a divorce from the plaintiff on the ground of her alleged abandonment. A warning order was issued in that action, and there was an appointment of a "representative attorney." Doubtless, according to the proceedings had in that action in the territorial jurisdiction of Kentucky, the judgment would be efficient. (*Rhyms* v. *Rhyms*, 7 Bush. 316; *Hawkins* v. *Ragsdale*, 80 Ky. 353.) However, as no process was personally served on her in the State of Kentucky, and she made no appearance in that suit, and in no way has consented thereto, and did no act which gave the judgment binding force upon her in this State, we think, according to the well-settled rule laid down in numerous cases in this State, that the judgment is wholly inoperative in this State, and was not binding upon the plaintiff at the time of the commencement of this action, and that it forms no bar to her right to maintain this action against the defendant, who has personally appeared in the action. (*Borden* v. *Fitch*, 15 Johns. 122; *Beckwith* v. *Beckwith*, 24 Wkly. Dig. 5; *Kerr* v. *Kerr*, 41 N. Y. 272; *Hoffman* v. *Hoffman*, 46 id. 30; *People* v. *Baker*, 76 id. 78; *O'Dea* v. *O'Dea*, 101 id. 23; *Jones* v. *Jones*, 108 id. 415; *Cross* v. *Cross*, 22 Wkly. Dig. 309; S. C. affd., 108 N. Y. 628; *de Meli* v. *de Meli*, 120 id. 485; *Rigney* v. *Rigney*, 127 id. 408; *Williams* v. *Williams*, 130 id. 193; *Davis* v. *Davis*, 51 N. Y. St. Repr. 509; S. C., 22 N. Y. Supp. 191; 2 Bish. Mar., Div. & Sep. [ed. 1891] § 155.) Most of the authorities are quite satisfactorily reviewed in the opinion delivered at Special Term.

Inasmuch as the plaintiff was dwelling within this State at the

time of the commencement of this action, according to section 1768 of the Code, as already stated, "She is deemed a resident thereof, although her husband resides elsewhere."

Although the husband, in his action pending in the State of Kentucky, was not allowed to obtain a divorce for the abandonment of him by his wife without proof that such abandonment was without fault upon his side, and although it may be true that that judgment adjudged that his abandonment was without his fault, such adjudication is not binding or conclusive upon the defendant here inasmuch as the court had no jurisdiction of her at the time it rendered such judgment; and we cannot assent to the ingenious argument made by the learned counsel for the appellant, based upon a supposed force of that judgment, as the assumption of the argument is that both "were domiciled, during their whole married life," in the State of Kentucky, which assumption, we think, is not well founded. (*Rigney* v. *Rigney, supra; Williams* v. *Williams, supra; Davis* v. *Davis, supra.*)

(3) It is now well settled that, after parties have separated, "a contract may be made through the intervention of a trustee, which is effective to bind the husband to contribute the sum therein provided for the future support of the wife." (*Galusha* v. *Galusha,* 116 N. Y. 642.) In that case, as well as in the case in hand, the contract was made after actual separation through the intervention of a trustee, and the defendant made several advances and payments according to the tenor of the contract thus entered into. The court, in *Galusha* v. *Galusha,* in speaking of the contract, said : "After its making it was not in the power of either party, acting alone and against the will of the other, to do an act which would destroy or affect that contract. * * * The law looks favorably upon and encourages settlements made outside of courts between parties to a controversy. If, as in this case, the parties have legal capacity to contract, the subject of settlement is lawful, and the contract, without fraud or duress, is properly and voluntarily executed, the court will not interfere." And in *Galusha* v. *Galusha* (138 N. Y. 283), after approving of the case from which we have already quoted, the court observed : "As the parties had, by an agreement lawful in form and apparently valid, stipulated as to the amount which the husband should pay for the support of the wife, that agreement, it was held,

so long as it remained unrevoked, was the proper measure of compensation which the defendant should render for her maintenance after the dissolution of the marriage tie. * * * The effect of the former decision is to render the separation agreement conclusive upon the plaintiff as to the amount of her allowance out of her husband's estate, until she becomes the actor in some action or proceeding to terminate it." In the case in hand there are no allegations in the complaint attacking the validity of the separation agreement and no specific prayer in the plaintiff's complaint that the agreement be canceled or set aside, nor is the trustee made a party to this action. Under such circumstances, we think, the separation agreement was binding upon the parties to this action. In the agreement of October tenth, executed by the parties and by Goodenow, the trustee for the plaintiff, is found the following provision : "If a divorce shall be granted, this agreement, so far as it concerns provision for Mary G. Atherton, shall be carried into the decree, as in full satisfaction of all claims for alimony, and so far as concerns provision for and custody of the child, reserving to the court the usual power to provide against events and contingencies not covered by this agreement." The agreement stipulates that the defendant shall pay to the plaintiff " for her support $125.00, at the beginning of each month, until this agreement does, by its own terms, end." The provision directed by the decision at the Special Term for the plaintiff is for the same amount, and no satisfactory reason appears for disturbing the judgment in that regard entered upon the decision. The trial court properly exercised its equitable jurisdiction and discretion in the premises in awarding the custody of the child to the plaintiff, and in doing so followed well-recognized precedents. (*Matter of Waldron*, 13 Johns. 418 ; *People* v. *Olmstead*, 27 Barb. 9 ; *Mercein* v. *The People*, 25 Wend. 64, 106.)

The provision awarding an opportunity to the defendant to visit the child seems to be reasonable. Certain provisions are found in the agreement as to the amount the defendant, under the circumstances mentioned in the agreement, should pay annually " for the comfortable maintenance of the child ; " and, according to the provision of the agreement, it seems that the allowance was to vary to meet changing circumstances that might arise in respect to the care and custody of the child, if the circumstances should not remain as

mentioned in the agreement. Manifestly, the circumstances have changed, and it is quite apparent that the child, as such, was not bound by the terms of the agreement. It has been suggested in some cases that a provision as to the child is void as against public policy. (See *Allen* v. *Affleck,* 64 How. 380 ; *People* v. *Mercein,* 8 Paige, 67 ; *In re Maurer,* 18 Wkly. Dig. 568.) Section 1766 of the Code provides that where an action is brought by the wife for separation " the court may, in the final judgment of separation, give such directions as the nature and circumstances of the case require. In particular it may compel the defendant to provide suitably for the education and maintenance of the children of the marriage, and for the support of the plaintiff, as justice requires, having regard to the circumstances of the respective parties." It may be fairly assumed that the court exercised proper discretion in awarding the sum mentioned in its decision, to wit, $100 a month, to be paid for the support, education and maintenance of the child ; the child having now become upwards of four years of age, and its wants and needs and expenses are necessarily greater than they were in October, 1891, when the parties separated, and we think the provision in respect to the child should be sustained.

(4) Complaint is made by the learned counsel for the appellant of an incident that transpired during the progress of the trial in the presence of the parties and of their respective counsel. It seems the learned judge addressed himself to them in language of expostulation and admonition. In the course of his remarks he said : " I am satisfied that neither of these parties are bad people. They intend to be good people, Christian people, and considering the infant, dear to both, they ought to contrive to get together and be man and wife, and especially father and mother. * * * It seems to the court that whatever humiliation it may bring for the time being, or whatever sinking of self may be required, it is their duty to join hands over the cradle of the little baby." These remarks were followed by others evidently eminating from a tender solicitude the trial judge entertained towards the child, after hearing considerable evidence offered by either side relating to the controversy arising between the wife and husband. Counsel has called our attention to *Livermore* v. *Bainbridge* (44 How. 357 ; S. C. affd., 14 Abb. [N. S.] 227). In that case the referee, before making his

report, called on one of the plaintiffs personally and suggested to him whether it would not be better for the plaintiff to settle the matter with the defendant by paying him $35,000, which defendant would probably accept, as there were matters in evidence in the case which led him to believe that if he did give judgment for the defendant, it would necessarily be for a very large amount, and in that case, upon the opinion of FANCHER, J., delivered at Special Term, the report of the referee was set aside and the order made by him was affirmed in the General Term. The opinion at the General Term was delivered by DAVIS, P. J., in the course of which he observed: "It may be commendable in referee or court, in presence of both parties, to recommend and urge a settlement between themselves of their litigation." We find nothing in the case which aids the contention of the appellant, that the learned trial judge in the case now in hand committed any indiscretion or violated any rule of law. His observations were in the presence of the parties and of their respective counsel. If we were of the opinion that a more experienced trial judge, with less humane impulses, would have omitted the admonition and expostulation and entreaty to the parties, somewhat warmly pronounced, still we should be constrained to hold that no legal error was committed, and hence no sufficient ground is made manifest for interfering with the final results reached by the trial court upon the questions of fact.

(5) It is insisted by the appellant that the trial court erred in its sixth conclusion of law, which was as follows: "That the said defendant pay to the said plaintiff or her attorneys, and that the said plaintiff recover of him the sum of $1,000 counsel fee allowed in this action, and that she have execution therefor." A similar provision is inserted in the judgment. In section 1769 of the Code of Civil Procedure it is provided that in an action like the one before us, "The final judgment in such an action may award costs in favor of or against either party. * * *" The authority of the court is such as is conferred by statute. (*Erkenbrach* v. *Erkenbrach*, 96 N. Y. 456; *McBride* v. *McBride*, 119 id. 519.)

In *Beadleston* v. *Beadleston* (103 N. Y. 403) it was held that the power of the court to make an allowance to the wife for counsel fees and expenses, is limited to such sums as may be necessary to enable her to carry on or defend the action. In that case it also appeared

that, after a trial an application was made for counsel fees and other expenses " without showing in her moving papers that it was needed further to defend the action," and it was held that the allowance was unauthorized.

In *McCarthy* v. *McCarthy* a similar motion was made for extra allowance for costs, in addition to the plaintiff's taxable costs and disbursements, and we upheld an order denying the application, and our decision was affirmed by the Court of Appeals, as appears by the record thereof in 137 N. Y. 500. In that case it was intimated that if an appeal was taken upon the merits and an application was made for expenses to maintain or prosecute her rights under the judgment, the court would be authorized to make an allowance, including therein such expenses. We think the decision and judgment should be modified by striking therefrom the allowance of $1,000 counsel fee, and that it should remain so far as it awards the plaintiff taxable costs and disbursements.

MARTIN and MERWIN, JJ., concurred.

Judgment modified by striking therefrom " the sum of $1,000 counsel fee allowed," and as so modified affirmed, with costs to the respondent against the appellant.