(21 App. Div. 142.)

KISSAM v. KISSAM.

(Supreme Court, Appellate Division, Second Department. October 5, 1897.)

HUSBAND AND WIFE—SEPARATION—DRUNKENNESS OF HUSBAND.
   A separation will be granted at the suit of the wife where the husband
   was for a large part of the time in a state of intoxication, ranging from
   partial to complete stupor, and had on several occasions inflicted personal
   violence on the person of the wife.

Appeal from judgment on report of referee.
Action by William V. Kissam against Leila N. Kissam for separa-
tion.    From a judgment granting a separation on the counterclaim
of the wife, plaintiff appeals.    Affirmed.
Argued before GOODRICH, P. J., and CULLEN, BARTLETT,
HATCH, and BRADLEY, JJ.

William J. Hardy, for appellant.
J. S. L'Amoreaux and Frederick C. Dexter, for respondent.

HATCH, J.    The plaintiff brought his action for a separation,
based upon the allegations of abandonment by the defendant, and
of a continued refusal by her to live with him.    The defendant an-
swered by interposing a denial of the abandonment, and setting up
by way of counterclaim that the plaintiff abandoned her, and that he

has been guilty of cruel and inhuman treatment towards her of such a character as renders it unsafe and improper for her to cohabit or live with him; and asked judgment for a separation, together with other relief. The evidence given upon the trial before the referee was very voluminous, and, in effect, gave a detailed account of the marital relations of the parties from the time of their marriage down to the date of the alleged abandonment, and, to some extent, afterwards. By the record it appears that the plaintiff was addicted to the use of intoxicating liquors to an extent which brings him dangerously near to being an habitual drunkard. Between the date of his marriage, in November, 1892, and December, 1895, he was an inmate of four different asylums or institutions for the cure of drunkenness. The first institution he visited for the cure of his alcoholic habit was at White Plains. He entered this institution in the last of February, and remained until the 6th of April, 1893. He almost immediately relapsed into his former habits upon leaving the institution, and on the 30th day of the last-named month he again sought admission to the same institution, and was refused. In May, 1894, he was an inmate of the New York Christian Home, a cure for inebriates, where he remained, taking treatment, for about $2\frac{1}{2}$ months. About August 1, 1894, he entered a similar institution at Ft. Hamilton, where he remained six or seven months. In June, 1895, he entered the Rose Baker Gold Cure at Cornwall, where he remained about three months. He left Cornwall in the last of September, had a relapse, and returned in November, 1895, remaining until December 9th of that year. In the interval between his discharge from the last-named institution, in September, and his return thereto, in November, he had a period of sobriety sufficient in length to enable him to verify his complaint, and institute an action against his wife, charging her with abandonment, and demanding the custody of the child of the marriage. He had prior thereto evidenced an intention of laying the foundation for this action, for while he was an inmate of the institution at Ft. Hamilton he caused a letter to be written to the plaintiff's father, as her attorney (he being a lawyer), demanding that she forthwith return to his bed and board. Just where his bed and board were to which he invited his wife at this time does not clearly appear. There is nothing which would lead to the supposition that he expected her to join him at Ft. Hamilton. While it is the rule that drunkenness alone is not sufficient upon which to base an action for separation, yet it has logically and rightfully an important bearing upon the question of cruel and inhuman treatment, sufficiently so to characterize acts as cruel and inhuman which would otherwise be regarded as insufficient for that purpose. Continued drunkenness may be so connected with other acts of the husband as to lead the mind to the conclusion that cohabitation with him by the wife may become unsafe and improper, and therefore justify a judgment of separation, when the acts, standing alone, would be insufficient to support such a result. In the present case the referee was justified, upon the evidence, in reaching a conclusion that the plaintiff, so long as he continued to live with the defendant, was for the larger part of the time in a state of intoxication, in stages ranging from partial to complete stupor.

The mortification, pain, suffering, and mental anguish which is engendered in the mind of a sensitive, refined woman by such conduct, is oftentimes more acutely cruel than the bruising of the flesh by a blow. The vice chancellor was not speaking of an aggravated case of intoxication and drunkenness when he wrote in Mason v. Mason, 1 Edw. Ch. 278, as is found in the present record. We recognize the fact, however, that the court has usually insisted that acts constituting cruel and inhuman conduct in a legal sense are such as arise from actual violence, endangering life, limb, or health, or creating a reasonable apprehension of such violence. Kennedy v. Kennedy, 73 N. Y. 369. This rule, however, is subject to qualification, and, as we have before observed, the existence of aggravated drunkenness in connection with acts of violence may make out a case where otherwise it would fail. The rule of the later cases has brought the doctrine to rest upon a rule somewhat less strict and more humane than some of the earlier cases. Mr. Justice Van Brunt states this to be the rule:

"Cruel and inhuman treatment does not necessarily imply such treatment as places a wife in physical fear of the husband. The conduct of the husband may produce such mental agony in the wife as to be even more cruel and inhuman than if mere physical pain had been inflicted; and where the conduct of the husband toward the wife is of this character, it is certainly cruel and inhuman, and justifies the court in freeing her from the necessity of submission to such treatment." Lutz v. Lutz (Sup.) 9 N. Y. Supp. 858.

This doctrine has received support from other courts (Atherton v. Atherton, 82 Hun, 179, 31 N. Y. Supp. 977; Waltermire v. Waltermire, 110 N. Y. 183, 17 N. E. 739), and must now be regarded as the law. In the present case we find that upon at least three occasions the plaintiff inflicted personal violence upon the person of the defendant by striking her a blow. On one of these occasions the defendant says he was sober. Moore, a witness, says he was intoxicated. The scene is described by the defendant and by Moore, and leaves no room for doubt but that the act complained of justified the court in determining, when coupled with the other facts, that the treatment was cruel and inhuman. On another occasion, when the defendant was trying to rouse him from a drunken stupor, he struck her full in the face. It is argued that he was not conscious of this act, and probably this is true. But it did not mitigate the violence of the blow, nor does it detract from the fact that he intended to strike whoever it was that disturbed him. It was none the less a cruel blow. and he cannot be excused from its legal consequence by pleading that he was drunkenly stupid. Drunkenness has not invested its victim with legal immunity in such case. On the contrary, it is strong evidence to show that his drunken habit had created a condition which rendered him dangerous, and, consciously or unconsciously, liable to commit acts of personal violence which would be a constant menace to the personal safety of the wife, and might render it unsafe and improper for her longer to cohabit with him. It is not at all essential that we refer in detail to all of the acts which appear in the evidence. It is sufficient to say that we have examined the record, and find in it sufficient to justify the judgment which has

been rendered. If, however, the evidence in the record was insufficient to uphold the judgment, we should be compelled to reach the same conclusion, for the reason that there is no statement that the case contains all the evidence, and we must, therefore, presume that evidence was given sufficient to support the judgment.

There was also an appeal from an order allowing certain costs as taxed, which was argued with the present case. The order should be affirmed. The affidavit of the referee shows that the sum taxed as his fees was actually incurred, and it seems to be reasonable. In stating its amount in the bill of costs served upon the plaintiff, a mistake was made, but this should not prejudice the party in having the same corrected.

It follows that the judgment should be affirmed, with costs, and the order affirmed, with $10 costs and disbursements. All concur.